Filed 9/2/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B255092 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA412895) |
| v. | |
| ILDEFONSO MENDOZA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald S. Coen, Judge. Affirmed.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Ildefonso Mendoza was charged with two counts of sexual intercourse or sodomy with a child 10 years old or younger (Pen. Code, § 288.7, subd. (a); counts 1 & 2),[1] oral copulation or sexual penetration with a child 10 years old or younger (§ 288.7, subd. (b); count 3),[2] lewd act upon a child (§ 288, subd. (a); count 4), and possession of matter depicting a minor engaging in sexual conduct (§ 311.11, subd. (a); count 5). A jury convicted Mendoza on all counts. The trial court sentenced Mendoza to an aggregate state prison term of 67 years to life.

On appeal, Mendoza contends the trial court erred by failing to instruct the jury on the lesser included offenses of attempted sexual intercourse with a child 10 years of age or younger, attempted sodomy with a child 10 years of age or younger, and attempted oral copulation with a child 10 years of age or younger. Mendoza also contends the evidence was insufficient to support his conviction for possession of child pornography. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Prosecution's Evidence*

Mendoza lived with Maria Ignacio, their two sons Jesus and Adrian, and Ignacio's daughter, Jessica. Mendoza and Ignacio had been together for about five years.

#### 1. *The Events of May 5, 2013*

Ignacio testified as follows: On May 5, 2013, a Sunday, Ignacio left her house to go to the store. She took Jesus, who at the time was five months old, with her. Her son Adrian, then age two, and Jessica, age seven, did not go with their mother. When Ignacio

---

[1] All further statutory references shall be to the Penal Code unless otherwise indicated.

[2] While charged in the alternative, at trial the People argued only the oral copulation portion of the statute.

left, Mendoza was not at home. When she returned, she saw Mendoza's car. She went into her house and looked for Jessica. She entered her bedroom and saw Mendoza standing in front of the bed, wrapped in a blanket. Jessica was on the bed. Ignacio saw that Jessica had clothes only on one leg. Ignacio yelled at Mendoza, asking him what he was doing. He turned to look at Ignacio, dropped the blanket and pulled up his shorts. Jessica got out of bed and pulled up her clothing. Mendoza said he was not doing anything and that it was the first time he touched Jessica. Ignacio chased Mendoza out of the house and asked Jessica what happened.

Jessica did not want to talk much about what happened. Mendoza called every day asking Ignacio to forgive him and promising it would not happen again. Ignacio did not let him back in the house.

Jessica testified about the events of May 5, 2013. Jessica referred to Mendoza as Tocho. When her mother was at the store, Tocho asked Jessica "to play." He pulled Jessica into her mother's room and asked her to lie on the bed. He pushed her onto the bed and then took off his clothes. Tocho also took Jessica's clothes off, although she tried to pull her shorts or pants back up. Tocho "put his private part on [Jessica's] private part,"[3] and then he put it inside. Jessica was kicking him. Tocho said "a little bit more." Ignacio came in and told Tocho to stop. Ignacio hit Tocho and wanted him to leave.

### 2. *The Photographs*

On June 9, 2013, Ignacio logged into Mendoza's Facebook page. Ignacio knew Mendoza's password. She wanted to erase any pictures of Jessica so Mendoza could not see her. Ignacio discovered two photographs of Jessica and Mendoza. One picture showed Mendoza's penis on Jessica's vagina. The other picture showed Mendoza's penis inside Jessica's vagina. Ignacio could identify the blanket on her bed depicted in the photographs and Jessica's school uniform. She also recognized Mendoza's hand,

---

[3] Jessica testified that her private part is "where [she] go[es] pee pee."

3

which the picture showed grabbing his penis. Ignacio was enraged and deleted the two photographs. She went to the police that day and told them what had happened with Mendoza and Jessica. She took Jessica to be interviewed by the police that evening.

Jessica testified that once she had her pants or shorts off, and Mendoza asked her to cover her eyes. Jessica was lying on the bed in her mother's room. Mendoza took a picture of her on his phone and then told her she could open her eyes. Jessica did not see the picture.

The Los Angeles Police Department had Mendoza's cell phone forensically analyzed after he was arrested. The analyst was unable to find the two photographs Ignacio had described. The investigating officer also attempted to subpoena information from Facebook regarding Mendoza's account, but Facebook did not find the photographs. Facebook administrators indicated that once photographs are deleted from an account, they are not held forever.

### 3. *Earlier Events*

Jessica testified that Mendoza began touching her when she was about six, after her baby brother Jesus was born. Mendoza stuck his penis into Jessica's "front private part" about three to four times. Mendoza put his penis to her "back private part" about two times. Once Mendoza tried to get Jessica to put her mouth on his penis. Mendoza opened Jessica's mouth with his hand and put his penis inside her mouth. It made her feel nasty. Mendoza touched her in her mother's bedroom on the bed, and in Jessica's bedroom on the bed and on the floor. Mendoza told Jessica not to tell her mother about the touching.

### 4. *Jessica's Examination at UCLA Hospital*

Jessica was examined by Elizabeth Tighe, a nurse practitioner, at Santa Monica-UCLA Hospital's sexual assault clinic. Tighe saw no physical injuries to Jessica's vagina

4

or anus. Nicole Farrell, a forensic interview specialist, interviewed Jessica.[4] Jessica told Farrell that Tocho had "put his middle part" in her "middle part." Jessica did not remember how many times Tocho put his middle part in her middle part but thought it was three times. The first time was after her baby brother Jesus was born. Jessica could feel it when he put it in, "not all of it, just part."

Jessica told Farrell that one time Tocho told Jessica to lick his penis and was pushing her head to do so. Jessica was pushing her head back and her mouth was closed. Jessica stated, "he just put my head on . . . but I closed my mouth." Tocho put his middle part in her back "like four times." Jessica did not know if Tocho took pictures.

### 5. *Mendoza's Statements*

After Ignacio kicked Mendoza out of the house, but prior to his arrest, Ignacio met with Mendoza and recorded their conversation on her cell phone.[5] Mendoza admitted he touched Jessica with his hand and with his penis. Mendoza denied there was any penetration. Mendoza said the only time he touched Jessica was the day Ignacio had caught them in bed.

Mendoza was interviewed by Officer Jose Olmedo of the Los Angeles Police Department.[6] Mendoza admitted to touching Jessica with his hand and his penis during the May 5, 2013 incident. He stated he was standing next to the bed, his penis was more or less erect, Jessica was lying on the bed, and her legs were on his chest. At first Mendoza denied that his penis went inside at all but later agreed his penis was inside the labia, and "the only thing that goes in is the tip. . . . [I]t can't past that . . . [u]nless you force it." Mendoza admitted that he had touched Jessica on previous occasions, including

---

[4]     A video and audio recording of the interview was played to the jury and a transcript was provided.

[5]     A translated transcript of that conversation was admitted into evidence.

[6]     A videotape of the interview was played to the jury and a translated transcript was admitted into evidence.

one time when Jessica was on all fours and he put his penis on her anus. He stated his penis did not "get in," and "it's that you can't."

Mendoza said that Jessica put her mouth on his penis one time, and his penis went inside her mouth around five times. Mendoza stated that his penis had gone inside Jessica's vagina about three or four times. Mendoza took a picture of Jessica once with his cell phone, but he erased it.

## B.  *The Defendant's Evidence*

Mendoza presented no evidence.

## C.  *Jury Instructions*

During a conference outside the presence of the jury, defense counsel asked that the trial court instruct the jury on attempted oral copulation, on the basis that Jessica said she had kept her mouth closed. The trial court denied the request, reasoning that "[c]ontact is all that is required." Defense counsel did not request attempted sexual intercourse or attempted sodomy instructions.

## DISCUSSION

Mendoza contends his convictions under counts 1 through 3 must be reversed based on the trial court's failure to instruct on the lesser included offenses of attempted sexual intercourse of a child 10 years of age or younger, attempted sodomy of a child 10 years of age or younger, and attempted oral copulation of a child 10 years of age or younger. Mendoza also challenges his conviction for possession of child pornography (count 5) based on insufficiency of the evidence. We affirm.

6

**A.** *The Court Did Not Err in Failing To Instruct on Attempted Sexual Intercourse, Attempted Sodomy, or Attempted Oral Copulation*

    1. *Elements of the Offenses Charged and Principles Concerning Lesser Included Offenses*

The elements of sexual intercourse or sodomy with a child 10 years of age or younger (§ 288.7, subd. (a)) are: (1) The defendant engaged in a act of sexual intercourse or sodomy with the victim; (2) when the defendant did so, the victim was 10 years of age or younger; and (3) at the time of the act, the defendant was at least 18 years old. (CALCRIM No. 1127.)

Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis. (*People v. Dunn* (2012) 205 Cal.App.4th 1086, 1097; *People v. Karsai* (1982) 131 Cal.App.3d 224, 233-234, disapproved on another ground in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8; CALCRIM No. 1127). Sodomy similarly requires penetration, however slight. (§ 286, subd. (a); *People v. Farnam* (2002) 28 Cal.4th 107, 143; *People v. Huynh* (2012) 212 Cal.App.4th 285, 305.) These are general intent crimes. (See *People v. Richardson* (2008) 43 Cal.4th 959, 1018.)

The elements of oral copulation with a child 10 years of age or younger (§ 288.7, subd. (b)) are: (1) The defendant engaged in an act of oral copulation with the victim; (2) when the defendant did so, the victim was 10 years of age or younger; and (3) at the time of the act, the defendant was at least 18 years old. (CALCRIM No. 1128.) Oral copulation is defined as any contact, no matter how slight, between the mouth of one person and the sexual organ of another. Penetration is not required. (*People v. Dement* (2011) 53 Cal.4th 1, 41-44; see *People v. Huynh*, *supra*, 212 Cal.App.4th at p. 305.) This is also a general intent crime. (*People v. Warner* (2006) 39 Cal.4th 548, 557-558.)

Mendoza claims that in addition to instructing on the elements of these crimes, the trial court was obligated to sua sponte instruct on lesser included offenses of attempted sexual intercourse of a child 10 years of age or younger, attempted sodomy of a child 10 years of age or younger, and attempted oral copulation of a child 10 years of age or younger. We apply "the independent or de novo standard of review to the failure by a

trial court to instruct on" a lesser included offense. (*People v. Waidla* (2000) 22 Cal.4th 690, 733; *People v. Oropeza* (2007) 151 Cal.App.4th 73, 78.)

"A criminal defendant has a constitutional right to have the jury determine every material issue presented by the evidence, and an erroneous failure to instruct on a lesser included offense constitutes a denial of that right. To protect this right and the broader interest of safeguarding the jury's function of ascertaining the truth, a trial court must instruct on an uncharged offense that is less serious than, and included in, a charged greater offense, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of the charged greater offense are present. [Citations.] [¶] But this does not mean that the trial court must instruct sua sponte on the panoply of all possible lesser included offenses. Rather, . . . '"such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is '"evidence from which a jury composed of reasonable [persons] could . . . conclude[]"' that the lesser offense, but not the greater, was committed."' [Citation.]" (*People v. Huggins* (2006) 38 Cal.4th 175, 215.)

Before we consider whether the record supported giving instructions regarding attempt, we must determine whether attempted sexual intercourse of a child 10 years of age or younger, attempted sodomy of a child 10 years of age or younger, and attempted oral copulation of a child 10 years of age or younger are in fact lesser included offenses of the crimes charged. We conclude they are not, and the trial court thus did not err in failing to give these instructions.

### 2. *Attempts as Lesser Included Offenses*

Mendoza provides scant authority for his argument that attempt is a lesser included offense of the crimes charged. Mendoza cites to *People v. Austin* (2013) 219 Cal.App.4th 731, 733 and *People v. Rouse* (2012) 203 Cal.App.4th 1246, 1274-1275 for the proposition that attempted sexual intercourse is a lesser included offense of sexual intercourse. In *Austin*, the defendant was *charged* with both sexual intercourse and

attempted sexual intercourse, but the opinion contains no discussion of the doctrine of lesser included offenses. *Rouse* was depublished after a grant of review on May 23, 2012 (S201479) and cannot be cited as authority.[7]  (Cal. Rules of Court, rules 8.1105(e)(1), 8.1115(a); *Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 110 ["[b]ecause depublication renders the opinion noncitable and removes its precedential value, it nullifies the opinion and renders it nonexistent"].)

As to attempted sodomy, Mendoza relies on footnote 2 in *People v. Thompson* (2009) 177 Cal.App.4th 1424, 1427, disapproved on another ground in *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 888, which reads as follows:  "The jury acquitted [defendant] of [sodomy] and of the lesser included offense of attempted sodomy."  The opinion has no discussion of whether or not attempted sodomy is properly considered a lesser included offense of sodomy.

Mendoza relies on *People v. McEvoy* (2013) 215 Cal.App.4th 431, *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, and *People v. Kipp* (1998) 18 Cal.4th 349 for his contention that attempted oral copulation of a minor is a lesser included offense of oral copulation with a minor.  None of these cases analyzes whether attempted oral copulation is a lesser included offense of oral copulation of a minor.[8]  Cases are not authority for propositions not considered.  (*People v. Partida* (2005) 37 Cal.4th 428, 438, fn. 4.)

---

[7]     Although the Supreme Court subsequently dismissed review in *Rouse* on October 17, 2012, the Court of Appeal opinion remained unpublished because the Supreme Court did not order it published.  (Cal. Rules of Court, rule 8.528(b)(3) [after the Supreme Court issues an order dismissing review, "the Court of Appeal opinion remains unpublished unless the Supreme Court orders otherwise"].)

[8]     *McEvoy* mentions that a jury found appellant not guilty of oral copulation of an unconscious person and "the lesser offense of attempted oral copulation" (*People v. McEvoy*, *supra*, 215 Cal.App.4th at p. 433), but contains no analysis of lesser included offenses.  *Coffman and Marlow* describes the elements for attempted sodomy, and *Kipp* concerns whether the evidence was sufficient to prove defendant committed attempted oral copulation.  Neither contains a discussion of lesser included offenses.

In determining whether a trial court must instruct on a lesser included offense, "'a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]'" (*People v. Smith* (2013) 57 Cal.4th 232, 240, quoting *People v. Birks* (1998) 19 Cal.4th 108, 117-118, fn. omitted; *accord*, *People v. Banks* (2014) 59 Cal.4th 1113, 1160, disapproved in part on another ground in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.)

### a. *Elements Test*

In *People v. Bailey* (2012) 54 Cal.4th 740 (*Bailey*), the California Supreme Court applied the "elements" test to determine whether an uncharged crime is a lesser included offense of a charged crime. "The elements test is satisfied if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that all legal elements of the lesser offense are also elements of the greater." (*Id*. at p. 748.) The *Bailey* court concluded that attempted escape from prison was not a lesser included offense of the crime of escape from prison, as attempted escape is a specific intent crime, requiring intent to escape as an element of the charge. The court noted that section 21a provides that "'[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.'" (*Id*. at p. 749.) The *Bailey* court noted that the crime of escape is a general intent crime, not requiring that the defendant have a specific intent to escape as one of its elements. (*Ibid*.)

The *Bailey* court acknowledged that prior cases had implied that attempt is always a lesser included offense of a completed crime. However, the court cautioned that "'[w]e must not generalize in the law of attempt'" and that "'[t]he law of "attempt" is complex and fraught with intricacies and doctrinal divergences.' [Citation.]" (*Bailey*, *supra*, 54 Cal.4th at p. 753.) The court concluded that the general principle that attempt is a lesser

10

included offense of any completed crime[9] is not applicable where the attempted offense includes a particularized intent that goes beyond what is required by the completed offense. (*Ibid.*; see also *People v. Braslaw* (2015) 233 Cal.App.4th 1239, 1248 [applying *Bailey* reasoning to conclude "attempted rape of an intoxicated person is not a lesser included offense of rape of an intoxicated person"].)

Attempted sexual intercourse, attempted sodomy and attempted oral copulation with a child 10 years of age or younger are all specific intent crimes. (§ 21a.) Thus, under the elements test, they are not lesser included offenses of the charged general intent crimes. (Cf. *People v. Ngo* (2014) 225 Cal.App.4th 126, 157 [sexual penetration of a minor under § 288.7, subd. (b), is already a specific intent crime, requiring that the act be done "for the purpose of sexual arousal, gratification, or abuse," thus attempted sexual penetration is a lesser included offense of sexual penetration because it does not add a specific intent not already included under the definition of the completed offense].) Because of the different mental states required, a defendant could be guilty of the completed offense but not the attempt. As noted in *People v. Braslaw*, *supra*, 233 Cal.App.4th 1239, defenses may be available to the charge of attempt, which are not defenses to the general intent crime charged. (See *id.* at pp. 1249-1250 [voluntary intoxication of the defendant is a defense to attempted rape of an intoxicated person while voluntary intoxication of the defendant cannot negate general intent, the mental state required for actual rape of an intoxicated person].)

### b. *Accusatory Pleading Test*

Under the accusatory pleading test, we examine the language of the accusatory pleading. (*People v. Smith*, *supra*, 57 Cal.4th at p. 242.) Here, the information charges in count 1 that "[o]n or about May 5, 2013 . . . the crime of sexual intercourse or sodomy

---

9      Relying on this general principle without engaging in the analysis required by *Bailey*, the People mistakenly concede attempt is a lesser included offense to the crimes charged.

with child 10 years old or younger . . . was committed by [Mendoza], who being a person 18 years of age and older, did engage in sexual intercourse and sodomy with Jessica . . . , a child 10 years of age and younger." (Capitalization omitted.) Count 2 contains identical language but alleges a different time period. Count 3 charges that "[o]n or between October 13, 2010 and October 12, 2011 . . . the crime of oral copulation or sexual penetration with child 10 years old or younger . . . was committed by [Mendoza], who being a person 18 years of age and older, did engage in oral copulation and sexual penetration, as defined in . . . Section 289 with Jessica . . . , a child who was 10 years of age and younger." (Capitalization omitted.)

Neither count 1 nor count 2 charges that Mendoza had a specific intent to commit the offense. Because specific intent is a necessary element of attempt, under the accusatory pleading test, attempted sexual intercourse and attempted sodomy are not lesser included offenses of the crimes charged.

Count 3 charges Mendoza with the crime of oral copulation or sexual penetration, as defined in section 289. Section 289 defines sexual penetration as including a specific intent element, but does not pertain to oral copulation. Thus, the information does not plead that Mendoza had a specific intent to commit oral copulation. Because specific intent is a required element of attempted oral copulation, attempted oral copulation is not a lesser included offense of oral copulation under the accusatory pleading test.[10]

Because we conclude attempt was not a lesser included offense of sexual intercourse with a child 10 years of age or younger, sodomy of a child 10 years of age or younger or oral copulation of a child 10 years of age or younger, under either the

---

[10]     The People pursued only the oral copulation prong of section 288.7, subdivision (b). We acknowledge that sexual penetration is already a specific intent crime, and attempt is a lesser included offense. (*People v. Ngo*, *supra*, 225 Cal.App.4th at p. 157.) Here, however, the People did not present a theory of sexual penetration and there was no instruction on that crime. Under these circumstances, the trial court had no duty to instruct on the lesser included offense of attempted sexual penetration. Mendoza does not claim on appeal that the trial court should have so instructed.

elements test or the accusatory pleading test, the trial court did not err in failing to instruct the jury sua sponte on attempt to commit these crimes.

**B.** *Substantial Evidence Supported the Conviction For Possession of Child Pornography*

Mendoza argues the record contains insufficient evidence to support his conviction of possession of matter depicting a minor engaged in sexual conduct. Section 311.11, subdivision (a), makes it a crime to knowingly possess or control any matter, representation or image, the production of which involves the use of a person under 18 years of age personally engaging in sexual conduct.[11] Mendoza argues that he cannot be convicted of this crime because the actual photographs were not viewed by the jury, and the only evidence was presented through the testimony of Jessica's "enraged" mother, who deleted the images.

---

[11] Section 311.11, subdivision (a), provides as follows: "Every person who knowingly possesses or controls any matter, representation of information, data, or image, including, but not limited to, any film, filmstrip, photograph, negative, slide, photocopy, videotape, video laser disc, computer hardware, computer software, computer floppy disc, data storage media, CD-ROM, or computer-generated equipment or any other computer-generated image that contains or incorporates in any manner, any film or filmstrip, the production of which involves the use of a person under 18 years of age, knowing that the matter depicts a person under 18 years of age personally engaging in or simulating sexual conduct, as defined in subdivision (d) of Section 311.4, is guilty of a felony . . . ." Subdivision (d)(1) of section 311.4 defines sexual conduct as "any of the following, whether actual or simulated: sexual intercourse, oral copulation, anal intercourse, anal oral copulation, masturbation, bestiality, sexual sadism, sexual masochism, penetration of the vagina or rectum by any object in a lewd or lascivious manner, exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer, any lewd or lascivious sexual act as defined in Section 288, or excretory functions performed in a lewd or lascivious manner, whether or not any of the above conduct is performed alone or between members of the same or opposite sex or between humans and animals. . . ."

1. *Standard of Review*

We review "'"""the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."'"'" [Citation.] . . . 'We presume "'in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] This standard applies whether direct or circumstantial evidence is involved."' [Citation.]" (*People v. Thompson* (2010) 49 Cal.4th 79, 113.)

2. *Substantial Evidence in the Record Supports the Conviction*

Ignacio testified she found two pictures on Mendoza's Facebook account: one depicting Mendoza's penis in Jessica's vagina, and the other depicting his penis on top of Jessica's vagina. Ignacio recognized the blanket on the bed depicted in the pictures, Jessica's school uniform, and Mendoza's hand.[12] Ignacio testified that whenever Mendoza took photographs on his cell phone, the photographs would automatically backup on his Facebook page.

Mendoza argues he found no case in which a person was convicted of possessing child pornography where the actual images were not found in some storage medium. While this may be true, Mendoza similarly does not point us to any authority that the lack of the actual image precludes such a conviction. Here, there is substantial evidence from Ignacio regarding Mendoza's possession of images violative of section 311.11. Pursuant to Evidence Code section 411, "[e]xcept where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact." We conclude Ignacio's testimony was not inherently improbable (see *Alperson v. Mirisch Co.* (1967) 250 Cal.App.2d 84, 93) and was of solid value sufficient to support

_____

12      Mendoza concedes his conviction would not be subject to an insufficiency of the evidence attack had the photographs been found on his cell phone or Facebook page and been presented to the jury.

14

the conviction.  (Cf. *People v. Palaschak* (1995) 9 Cal.4th 1236, 1241 [loss of evidence of drugs should not defeat a possession conviction where there is direct or circumstantial evidence the substance had been in defendant's possession].)[13]

Further, although not required, there was other evidence to corroborate Ignacio's testimony.  Jessica recalled Mendoza once taking a picture of her with his telephone when she was partially clad on her mother's bed.  Mendoza admitted to Olmedo that he had taken a picture of Jessica once but had deleted it.  We find the record contains substantial evidence to support the conviction for possession of child pornography.

**DISPOSITION**

The judgment is affirmed.

STROBEL, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[13]     Although not challenged on this basis, we note that Evidence Code section 1523 allows oral testimony of the content of a writing under specified circumstances.

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.