Filed 1/10/22  P. v. Rodriguez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

FRANK RODRIGUEZ,

     Defendant and Appellant.

E076137

(Super.Ct.No. RIF1801702)

OPINION

APPEAL from the Superior Court of Riverside County.  Brian R. Aronson, Judge.  Affirmed.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting, and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Frank Rodriguez of numerous offenses stemming from his molestation of his sister, who was younger than 10 years old.  On appeal, Rodriguez

1

argues that there is insufficient evidence of penetration to support his conviction under Penal Code section 288.7, subdivision (a) (unlabeled statutory references are to this code). He also argues that his counsel provided ineffective assistance by failing to move for acquittal on that count, failing to move to suppress his statements to law enforcement, and failing to object to the restitution fine and certain fees. We reject Rodriguez's arguments, and we accordingly affirm.

BACKGROUND

A. *Jane Doe's Reports of Sexual Abuse*

Rodriguez is the oldest of eight siblings, and Doe is the youngest daughter. Rodriguez was born in 1997, and Doe was born in 2011.

In December 2016, when Rodriguez was 19 years old and Doe was five years old, Rodriguez moved in with his mother and five of his siblings, including Doe. In March 2017, around Doe's sixth birthday, Rodriguez, his mother, Doe, and three other siblings moved to another house. At the second house, Rodriguez shared a bedroom with one of his brothers, and Doe shared a bedroom with one of her sisters.

In April 2018, when Doe was seven years old, she and a friend approached the school playground monitor at lunchtime. The monitor testified that, in Doe's words, Doe's older brother "would pull her pants down and would put his private part in her private part and in her rear." The brother told Doe to keep secret what he was doing to her. The monitor immediately relayed the information to Doe's teacher and to the school principal.

2

Doe's teacher asked Doe what had happened, and, according to the teacher, Doe told her, "'My brother puts his private on my front and my butt, and I don't like it.'" The teacher and the principal reported the incident to authorities.

Later that day, Riverside County Sheriff's Deputy David Komins was dispatched to Doe's home to investigate. Komins questioned Doe, and Doe told him that Rodriguez had touched her inappropriately and told her to keep it secret. Doe told Komins that Rodriguez first started touching her when she was four years old.

According to Komins, Doe said that Rodriguez "would pull out his privates and put it on her leg" and "on top of her vagina." She also said that Rodriguez sometimes would "actually put his privates in her privates," by which she meant "her buttocks." Komins asked Doe whether Rodriguez put his "private parts" "inside her or on top of her," and Doe responded, "It was inside her buttocks." She said that had hurt.

Doe reported that Rodriguez last touched her the previous night in her bedroom while her sister was in the bathroom. Rodriguez "pulled down his pants, his underwear, and her pants and underwear, and put his privates in her front and back."

B. *Physical Examination of Doe*

The night Doe reported the abuse, a forensic nurse specializing in sexual assault examined her. The nurse found redness on the labia majora of Doe's vagina and tenderness on the clitoral hood and in the fold where the labia majora and labia minora meet. The nurse also found abnormal redness on the skin around Doe's anus. The nurse opined that sexual abuse could have caused the redness and tenderness.

3

The nurse described her findings in a written report. She reported that the findings were consistent with Rodriguez's having put his penis inside Doe's anus and vagina. The nurse testified that it is not always possible during an examination to ascertain whether penetration has occurred during sexual abuse, because female genitalia are elastic and stretch.

Dr. Sophia Grant is a medical doctor who specializes in child abuse medicine. She reviewed the nurse's report of Doe's physical examination, and she agreed that sexual abuse could have caused the physical conditions that were found. In a child aged seven, penetration, poor hygiene, or scratching could cause redness around the anus and redness or tenderness around the genitalia. Dr. Grant wanted Doe to return to her office so that she could verify the nurse's findings, particularly as related to swelling on Doe's clitoral hood, but Doe's mother refused. Dr. Grant explained that there often are not any physical signs of sexual abuse even with children age seven, and the findings instead are often normal.

C. *Forensic Interview of Doe*

The day after Doe first reported that Rodriguez had touched her, she was interviewed by a child forensic interviewer.[1] A video recording of the interview was played for the jury.

---

[1] The transcript of the interview appears to have a clerical error and lists the date of the interview as April 2, 2018, instead of April 3, 2018, which is the time-stamped date of the interview on the recording.

At trial, the interviewer explained that in her experience seven-year-old children cannot describe sexual experiences in the same detail as adults, and they tend to minimize their experiences. Children may not have yet learned the correct words for their anatomy, might be embarrassed, and might be concerned about sharing information they were told to keep private.

Doe told the interviewer that Rodriguez would "pull down his pants and touch his private part in the front and the back" starting when she was four years old. Doe explained that her "private parts" were the parts of her body from which she urinated and defecated. She did not know different terms for those parts of her body. Doe gestured toward her vagina to demonstrate the location of Rodriguez's "private part" on his body, and she confirmed that he used that part of his body to urinate. Doe said that Rodriguez touched her once per week in various rooms in their house while the other members of her family were elsewhere. Rodriguez told her to keep everything secret. Doe eventually told her teacher because Rodriguez "would always bug [her] to do it."

Doe could not recall the first incident, but she described the most recent incident, which she said occurred the "after yesterday" in her bedroom while her sister was in the bathroom. Rodriguez pulled his pants down and told Doe to pull her pants down if she wanted to use the phone. Doe said that Rodriguez touched her back "private part" with his hand and with "[h]is private." She explained that she meant the part of her body on which she sat and not the part she cleaned after using the restroom.

The interviewer asked Doe to describe all the parts of her "bottom" that Rodriguez touched with "his private." Doe said that Rodriguez touched her "middle" "bottom." Doe explained that he would do this when they were standing. Doe stood on top of her bed so she and Rodriguez would be about the same height. While in that position, Doe said that Rodriguez "would get his private part on" her front "private part." Rodriguez's body moved up and down when "it was touching private."

Doe also said that she had touched Rodriguez's "private" with her hand, and his "private" would move up and down. Rodriguez made her wash her hands after she touched "his stuff." Doe never saw Rodriguez's "private" even when she touched it with her hand. She demonstrated that she would look away when she touched it with her hand.

The interviewer asked Doe what part of her "front private" Rodriguez would touch with "his private"—"the top part," "the part that we wipe after we go pee," or the "hole in our private." Doe responded, "Just on the top."

Doe said that she touched her "private" every day to ensure that it was "okay" and because it was "itchy." Doe said that Rodriguez did not hurt her "when he did the front private." The interviewer testified that she had asked Doe about whether she experienced pain or discomfort to determine whether there had been any penetration.

D. *Law Enforcement Interview of Rodriguez*

After Komins interviewed Doe at her house, Komins drove Rodriguez to the police station. Rodriguez was not handcuffed and sat in the back seat of the patrol car.

Komins did not testify about any communication he may have had with Rodriguez before they arrived at the police station, where Komins and another law enforcement officer interviewed Rodriguez in a private room. A video recording of the interview was played for the jury.

When the interview began, Komins closed the door to the room and told Rodriguez he had closed the door so that they could "have a little privacy," because Rodriguez's mother was at the station and it was "[n]ot to like block [Rodriguez] or anything." Komins told Rodriguez that he was "free to go whenever [he] want[ed]."

Komins explained to Rodriguez that one of his sisters had made "pretty strong" allegations that he had been touching her, and Komins wanted to hear Rodriguez's side of the story. Komins asked Rodriguez to be truthful and warned that if he lied, there were other means of collecting evidence, such as through DNA or a lie detector test. Komins added that he "always tr[ied] to help someone" who is truthful and that he would do what he could to assist Rodriguez.

Rodriguez first said that he accidentally walked in on Doe in the bathroom one day and saw her "private parts," by which he meant "the back." Komins responded that the allegations were "a lot stronger than that" and told Rodriguez that if they found his DNA on Doe, then Rodriguez would need to provide a "legitimate reason" for its presence. Rodriguez could not think of any reason why his DNA would be on Doe. Komins said he believed Doe.

7

Rodriguez then stated, "Everything [Doe] told you is true." Asked what he meant, Rodriguez said that he "touched her private part" with his penis, adding "I put mine on hers and that's it." He also said that Doe would sometimes touch his penis. Asked how many times he touched Doe's vagina, Rodriguez responded that it had been around eight times, but he also described it as "a lot of times." Rodriguez said that he started touching Doe at the old house in 2016. The first time something happened, he touched and rubbed Doe's vagina "for a little bit" with his hand over her clothing. He estimated that he touched Doe three times at the old house. Rodriguez said he never ejaculated and denied ever "stick[ing]" his penis "in." He reiterated: "I didn't put it in there. I would never do that." He explained that he had "[j]ust touched it, that's it," which he explained meant "put[ting his] thing on hers."

Komins told Rodriguez that Doe had a urinary tract infection, which Komins explained would not occur in a child Doe's age unless Rodriguez put his penis inside her vagina or rubbed it into her vagina. Rodriguez replied, "I didn't do that to her." Rodriguez accepted the officers' suggestion to write Doe an apology letter, so the officers left him alone to do that.

Komins returned, placed Rodriguez under arrest, and advised him of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436, which Rodriguez said he understood. Komins continued questioning him. Rodriguez stated that he "[j]ust touched" Doe three or four times at the old house and said he never touched her with his penis there. At the new house, he said that he touched his penis to Doe's vagina approximately three times,

8

but he claimed that he "never put it in her." When asked what he did to Doe's buttocks, he claimed that he "[j]ust put it on top" but never inside of her. He said that he had twice put "it on both sides of the cheeks and that's it." Rodriguez said that the previous night he "put [his] penis on her butt," by which he meant placing it on top of both sides of her buttocks. He said he last "put it on top of her vagina" three months earlier. Rodriguez confirmed that he told Doe to keep everything a secret.

Rodriguez's letter to Doe was admitted into evidence and read to the jury. Rodriguez apologized "for what [he] did to [her]." He wrote, "I know what I did to you was wrong," and "I shouldn't be doing any of that stuff to you."

E. *Doe's Testimony*

Doe was nine years old at the time of trial. She recalled previously talking to the playground monitor, a law enforcement officer, and the forensic interviewer about what Rodriguez had done to her. She reported to the playground monitor that Rodriguez "was putting his front and back in [her] front and back." Doe explained that the "front" referenced the part of the body used to urinate (for both her and Rodriguez) and her "back part" referred to the part of her body from which she went "No. 2." The prosecutor asked Doe if she had told the officer that Rodriguez "put[] his private part in [her] private part" "[i]n the front and the back," and Doe confirmed that she had. The prosecutor asked Doe if she had told the interviewer that Rodriguez "put his private part in [her] private part in [her] front and [her] back," and Doe responded that she had.

9

Doe testified that Rodriguez started touching her when she was six years old. She explained that when Rodriguez touched her "front" with his "front part of his body that he would use to go pee," she and Rodriguez were clothed. Doe could not provide further detail about how this happened. Rodriguez touched her "front part" with his "front part" more than once, but she could not recall if it happened more than two times.

Rodriguez first touched her at the old house when she was six years old, and he touched her once per week after that when she was six and seven years old. He touched the part from which she urinated with "his private part where he goes pee" while they were both standing and clothed. She stood on top of the bed. She did not see his penis.

Rodriguez once touched her vagina in a way that made it hurt, but she could not recall what happened to make it hurt. It hurt less than when she had tripped over a tree branch. Doe did not tell anyone when it hurt because Rodriguez told her to keep it a secret.

Either once per month or once per week, Rodriguez touched Doe on her "back part where [she] go[es] poop." Rodriguez once touched that "back part" with "[h]is front" "where he uses the bathroom," and it hurt "a little" "for a little bit" afterward. This happened while Doe was lying on her side on the living room floor, and Rodriguez hugged her while they were clothed.

Doe also testified that Rodriguez touched her "front and back" which she used to "pee and poop" with "[h]is front" "where he goes pee" when neither of them was wearing underwear. He stood behind her, so they were facing away from one another. While in

10

that position, Rodriguez "put[] it in [her] back," meaning the part of her body where she "go[es] No. 2." Rodriguez did that to Doe "a lot of times." On cross-examination, defense counsel and then the trial court asked Doe to clarify if Rodriguez touched her with his "front part" "where [she] sit[s] down" or "where [she] go[es] to the bathroom," and Doe responded that it was the body part that she used to go to the bathroom.

The day before Doe reported that Rodriguez was touching her, Rodriguez went into Doe's bedroom and pulled down his pants and underwear, and he told Doe to do the same. The prosecutor asked Doe if Rodriguez put his "private part" "on" and "in the front part and the back part of [her] private," and Doe answered both questions in the affirmative.

Doe also recalled Rodriguez taking her hands and rubbing them up and down on his "private part" while he was not wearing underwear, which made her feel uncomfortable. She washed her hands afterward at Rodriguez's direction.

F. *Convictions*

Rodriguez was charged with one count of engaging in sexual intercourse or sodomy with Doe when she was under the age of 10 (§ 288.7, subd. (a)), one count of oral copulation or sexual penetration, as described in section 289, of Doe when she was under the age of 10 (§ 288.7, subd. (b)), eight counts of lewd and lascivious conduct with Doe when she under the age of 14 (§ 288, subd. (a)), and one count of continuous sexual abuse of Doe when she was under the age of 14 (§ 288.5).

11

The prosecutor moved to dismiss the continuous sexual abuse count after both sides rested, and the trial court granted the motion. After the prosecutor's closing argument, the trial court on its own motion under section 1118.1 acquitted Rodriguez of the offense of orally copulating or sexually penetrating Doe under section 288.7, subdivision (b). The court concluded that the subdivision was inapplicable because there was no evidence that Rodriguez penetrated Doe with any object other than his penis. (See § 289, subd. (k)(1), (3) [sexual penetration means any penetration of the anus or genitalia "by any foreign object, substance, instrument, or device, or by any unknown object," which includes a penis "when it is not known whether penetration was by a penis or by a foreign object, substance, instrument, or device, or by any other part of the body"].)

The jury convicted Rodriguez of the remaining nine offenses. The trial court sentenced him to 25 years to life for the conviction under section 288.7, subdivision (a), and six years for each of the remaining eight offenses to run concurrently.

## DISCUSSION

A. *Ineffective Assistance of Counsel—Rodriguez's Confession*

Rodriguez argues that his trial counsel provided ineffective assistance by failing to move to suppress Rodriguez's statements to law enforcement. He contends that he should have been advised of his *Miranda* rights from the outset of the interrogation, because he was in custody. He also argues that his admissions were coerced and therefore involuntary. We are not persuaded that counsel's performance was deficient.

12

To prevail on an ineffective assistance of counsel claim, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the error, the result of the proceeding would have been more favorable to the defendant.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688.)  "On direct appeal, a finding of deficient performance is warranted where '(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.'"  (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165 (*Johnsen*).)  When, however, "'counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.'"  (*Ibid.*)

The record here does not reveal why defense counsel did not move to suppress all or part of Rodriguez's statements to law enforcement.  We cannot conclude on this record that there is no conceivable reason for failing to do so.

Rodriguez faced one count of violating section 288.7, subdivision (a), and one count of violating section 288.7, subdivision (b), each of which carries a mandatory indeterminate life sentence.  The prosecutor argued that Rodriguez committed those offenses by penetrating Doe's anus and vagina with his penis.

Even without Rodriguez's confession and apology letter, there was overwhelming evidence supporting the eight remaining counts of lewd and lascivious conduct with a

child under 14. Doe consistently reported to the school playground monitor, her teacher, a law enforcement officer, and the forensic interviewer that Rodriguez touched her front and back "private parts" with his "private part." In addition, she consistently reported that this touching occurred once per week at the homes where they lived together for over one year. Moreover, the examining nurse and the reviewing doctor opined that the physical findings from Doe's examination were consistent with sexual abuse.

In light of that extensive evidence, defense counsel could have believed that the best strategy was to attack the weakness of the evidence of penetration for the section 288.7 offenses. Although Rodriguez admitted to law enforcement that he had touched Doe's vagina and buttocks with his penis about eight times, he also adamantly and repeatedly denied that any penetration occurred. Rodriguez's confession was therefore favorable to him on the issue of penetration. Rodriguez's denial was the only affirmative evidence undermining the allegation that penetration occurred. Defense counsel emphasized Rodriguez's denial in closing argument to urge the jury not to convict him of the one remaining count under section 288.7.

The reasonableness of the strategy of admitting Rodriguez's statements for that purpose is apparent from the trial judge's comments during sentencing. Addressing Rodriguez, the judge remarked, "this is a difficult case for me, too, because I heard the evidence and I watched you in court. I watched the video of the interview with you. And it struck me that you were being sincere and that you were being honest about what it is you did. [¶] And I thought that the evidence of penetration was unclear, however, the

14

jury didn't think so, and the jury did find you guilty of that count." Thus, the trial judge believed Rodriguez was being truthful when he denied having ever penetrated Doe. Defense counsel reasonably could have believed that Rodriguez's denial might similarly persuade the jury.

Because there is at least one conceivable reason for defense counsel's decision not to move to suppress Rodriguez's statements to law enforcement, we conclude that on this record Rodriguez has not shown that counsel's failure to do so was deficient.

B. *Sufficient Evidence of Penetration*

Rodriguez argues that there is insufficient evidence of penetration to support the conviction under section 288.7, subdivision (a). He also argues that his counsel was ineffective for failing to move for acquittal on that count. Both arguments lack merit.

Our role in reviewing the sufficiency of the evidence is limited. "We review the entire record to determine whether it discloses reasonable and credible evidence to allow a rational trier of fact to determine guilt beyond a reasonable doubt." (*People v. Cardenas* (2020) 53 Cal.App.5th 102, 119, fn. 11.) "We draw all reasonable inferences in favor of the judgment." (*Ibid.*) We do not weigh the credibility of witnesses. (*Ibid.*) We apply the same standard to cases in which the prosecution relies primarily on circumstantial evidence. (*People v. Rivera* (2019) 7 Cal.5th 306, 324.)

"Any person 18 years of age or older who engages in sexual intercourse or sodomy with a child who is 10 years of age or younger is guilty of a felony and shall be punished by imprisonment in the state prison for a term of 25 years to life." (§ 288.7,

15

subd. (a).) "Sexual intercourse means any penetration, no matter how slight," by the penis of the vagina or the external female genitalia. (*People v. Mendoza* (2015) 240 Cal.App.4th 72, 79 (*Mendoza*); see *People v. Dunn* (2012) 205 Cal.App.4th 1086, 1097; *People v. Karsai* (1982) 131 Cal.App.3d 224, 232, disapproved on another ground in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8.) "Sodomy similarly requires penetration, however slight." (*Mendoza*, *supra*, at p. 79.)

The record contains substantial evidence that Rodriguez penetrated Doe's vagina or external genitalia and her anus with his penis. Doe told numerous adults that Rodriguez put his "private part," which she confirmed meant the part of the body from which he urinated, in her "front and back private parts," which she confirmed were the parts of her body from which she urinated and defecated. According to the playground monitor to whom Doe first reported the abuse, Doe told her that Rodriguez "would pull her pants down and would put his private part *in her* private part and *in her* rear." (Italics added.) At trial, the monitor related that she was using the words Doe had used. Doe testified that she told the playground monitor that Rodriguez "was putting his front and back *in my* front and back." (Italics added.) Doe likewise reported to Komins that Rodriguez "put his privates *in her* privates," by which she told him that she meant her buttocks. (Italics added.) When Komins asked her whether she meant that Rodriguez put his penis "on top" or "inside," Doe confirmed that he put his penis "*inside* her buttocks." (Italics added.) She described the most recent incident to Komins as Rodriguez "put[ting] his privates *in her* front and back," and she confirmed at trial that she had told

16

Komins that Rodriguez put "his private part *in*" her "front and back." (Italics added.) From all of that evidence, the jury could reasonably infer that when Doe said that Rodriguez put his private part "in her" "front and back private parts" she was describing Rodriguez penetrating her anus and vagina or external genitalia with his penis.

Additionally, Doe testified that Rodriguez hurt her once when touching her "front part" with his penis and once when touching her "back part where [she] go[es] poop." The forensic interviewer confirmed that she questions children about painfulness to ascertain whether there was any penetration. Thus, the jury could reasonably infer that Doe experienced pain because Rodriguez penetrated her anus and her vagina or external genitalia with his penis.

Moreover, the forensic nurse's findings and the doctor's review of those findings further support the same inference. The nurse found redness on the labia majora and on the skin around Doe's anus and tenderness in the folds where the labia majora and labia minora meet and on the clitoral hood. The nurse opined that those findings were consistent with Rodriguez's having put his penis inside Doe's vagina and anus. The doctor who reviewed the nurse's written report of the examination agreed that on a seven-year-old girl redness around the anus and redness or tenderness around the genitalia are consistent with penetration by a penis.

Rodriguez argues that the evidence is insufficient because (1) there was no direct evidence of penetration, (2) the prosecutor never asked Doe what she meant when she stated that Rodriguez "put his penis 'in' the front or back," and (3) the prosecutor "never

17

asked Doe directly whether [Rodriguez's] penis had penetrated either her genitalia or her anus, either directly or through the use of descriptive exhibits." We disagree. First, circumstantial evidence can be sufficient to establish penetration. (*People v. Holt* (1997) 15 Cal.4th 619, 668-669 (*Holt*).) Second, Doe testified that she told the playground monitor that Rodriguez "was putting his front and back in my front and back," and she confirmed that she told Komins that Rodriguez "put[] his private part in [her] private part." Doe's testimony is direct evidence. (*People v. Moore* (1961) 196 Cal.App.2d 91, 99.)

If Doe had used the anatomically correct terms for her body parts and clarified what she meant by "in" and "inside," then her testimony would have provided even stronger evidence of penetration. But we are concerned with "whether the evidence was sufficient, not whether hypothetical evidence would have strengthened the prosecution's case." (*People v. Vargas* (2020) 9 Cal.5th 793, 822.) Moreover, the jury was free to discredit certain improbable portions of Doe's testimony about what happened—such as that Rodriguez put his "back" in her "private parts" and that he put his penis in her while they were both fully clothed—while crediting other portions of her testimony and statements outside of court. (*People v. Williams* (1992) 4 Cal.4th 354, 364.)

Moreover, Doe clarified what she meant by "inside" when she told others what happened. When Komins specifically asked Doe whether Rodriguez put his "private parts" "inside her or on top of her," Doe stated that "[i]t was inside her buttocks." In addition, on cross-examination, Doe explained that Rodriguez touched her buttocks with

18

his penis "where [she] go[es] to the bathroom" as opposed to "where [she] s[a]t down," which the jury could reasonable infer meant her anus as opposed to her buttocks.

We also reject Rodriguez's argument that the evidence is insufficient because the record contains evidence that there was no penetration. We agree that the record does contain such evidence, namely, Rodriguez's denials that he ever penetrated Doe's anus or vagina. In addition, the doctor explained that poor hygiene could have caused the redness and tenderness. And Doe said that Rodriguez put his "private part *on* [her] private part." (Italics added.) But "[t]he fact that the evidence may also support other scenarios does not render insufficient the evidence supporting the verdict." (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1326, abrogated on another ground as stated in *People v. Hardy* (2018) 5 Cal.5th 56, 100; *Holt*, *supra*, 15 Cal.4th at p. 669 ["That the evidence might lead to a different verdict does not warrant a conclusion that the evidence supporting the verdict is insubstantial"].)

For all of these reasons, we conclude that there was sufficient evidence of penetration to support the conviction under section 288.7, subdivision (a). Because there was sufficient evidence of penetration, Rodriguez cannot carry his burden of demonstrating that he was prejudiced by counsel's failure to move for acquittal on that count. We consequently reject Rodriguez's argument that counsel was ineffective on that basis.

C. *Ability to Pay Hearing*

Rodriguez argues that imposition of the restitution fine and other fees without a determination of his ability to pay violated his due process rights and the excessive fines clause of the Eighth Amendment. He also argues that his counsel's failure to object on that basis amounted to ineffective assistance of counsel. We conclude that Rodriguez's challenge is forfeited because he failed to object in the trial court, and that failure did not amount to ineffective assistance of counsel.

Rodriguez was sentenced in October 2020, nearly two years after the publication of *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). *Dueñas* held that defendants have a due process right under the federal and state constitutions to a hearing on their ability to pay court operations and facilities fees.[2] (*Id.* at p. 1164.)

At sentencing, the court first ordered Rodriguez to pay victim restitution, if requested, in an amount to be determined at a later date. In ordering victim restitution, the court noted, "Obviously, you have limited means, but you will be earning some money in custody and that money—some of that money can be withheld for these purposes." The court then declined to impose various fees and a fine requested by the probation department, including a booking fee (Gov. Code, § 29550), the cost of preparing the presentence investigation report (former § 1203.1b), presentence incarceration costs (§ 1203.1c), and a sex offender fine (§ 290.3). The court imposed

---

[2] The Supreme Court has granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844 [2019 Cal. Lexis 8371], to decide whether a court is required to "consider a defendant's ability to pay before imposing or executing fines, fees, and assessments."

$630 in court operations and facilities fees (§ 1465.8, subd. (a)(1); Gov. Code, § 70373, subd. (a)(1)). The court rejected the probation department's recommendation to impose the maximum restitution fine of $10,000 under section 1202.4 and instead imposed a $2,700 restitution fine (§ 1202.4, subd. (b)) and a suspended $2,700 parole revocation fine (§ 1202.45, subds. (b)-(c)). Defense counsel did not object.

The People argue that Rodriguez's failure to object below resulted in forfeiture of any challenges to the imposed fines and fees on appeal. We agree. In general, a defendant's failure to object to the imposition of fines and fees at sentencing results in forfeiture of the right to challenge those fines and fees on appeal. (See, e.g., *People v. Aguilar* (2015) 60 Cal.4th 862, 865-869; *People v. Trujillo* (2015) 60 Cal.4th 850, 856-861; *People v. McCullough* (2013) 56 Cal.4th 589, 597 (*McCullough*).) When Rodriguez was sentenced, section 1202.4 allowed the court to consider Rodriguez's ability to pay a restitution fine above the minimum amount, as was imposed here. (§ 1202.4, subd. (c); *People v. Nelson* (2011) 51 Cal.4th 198, 227 (*Nelson*); *People v. Taylor* (2019) 43 Cal.App.5th 390, 399-400 (*Taylor*).) Rodriguez's failure to object on that ground in the trial court consequently forfeits that argument on appeal. (*Nelson*, *supra*, at p. 227; *Taylor*, *supra*, at pp. 399-400.) Moreover, because *Dueñas* was decided before Rodriguez was sentenced, there was legal authority that Rodriguez had a constitutional right to have a court determine his ability to pay before imposing the statutorily mandated court operations and facilities fees. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.) Consequently, Rodriguez's failure to object in the trial court to the imposition of court

21

operations and facilities fees on that basis also results in forfeiture of the challenge on appeal. (See *Nelson*, at p. 227 [the defendant could have objected because the law when he was sentenced called for the court to consider ability to pay].)

We decline Rodriguez's request for us to exercise our discretion to consider those forfeited arguments because Rodriguez has not articulated any reason for us to do so. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party"].) We similarly reject Rodriguez's argument that we excuse the forfeiture because of the constitutional right at issue. (See *McCullough*, *supra*, 56 Cal.4th at p. 593 [constitutional rights "'"'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it'"'"].) The same court that decided *Dueñas* later held that a defendant must "in the first instance contest . . . his or her ability to pay the [charges] to be imposed and at a hearing present evidence of his or her inability to pay . . . ." (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490.) In addition, we reject Rodriguez's argument that the unauthorized sentence exception to the forfeiture rule applies, because his inability to pay argument is based on factual determinations and not pure questions of law, as required for the exception to apply. (*In re G.C.* (2020) 8 Cal.5th 1119, 1130; *People v. Torres* (2020) 44 Cal.App.5th 1081, 1085.)

Rodriguez's argument that his counsel provided ineffective assistance by failing to object in the trial court also fails. No reason appears in the record for counsel's failure to

object on on the basis of inability to pay, so "'we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.'" (*Johnsen*, *supra*, 10 Cal.5th at p. 1165.)  Here, the trial court demonstrated that it considered Rodriguez's financial circumstances and future earning capacity while in custody when it ordered him to pay victim restitution.  The trial court then refused to impose thousands of dollars in fines and fees requested by the probation department, including a $4,300 sex offender fine under section 290.3.  Section 290.3 required the trial court to impose fines for each of the offenses Rodriguez was convicted of "unless the court determine[d] that the defendant does not have the ability to pay the fine."  (§ 290.3, subd. (a).)  In addition, the trial court rejected the probation department's request to impose the maximum restitution fine of $10,000 (§ 1202.4, subd. (b)) and instead imposed a $2,700 restitution fine—less than one-third of the amount requested.  In light of the trial court's express acknowledgment of Rodriguez's financial circumstances and the court's refusal to impose a much greater total amount of fines and fees, counsel conceivably could have believed that an objection would have been futile because the trial court already took into consideration Rodriguez's ability to pay when it imposed the restitution fine and the court operations and facilities fees.

Even assuming for the sake of argument that counsel's performance was defective, Rodriguez cannot carry his burden of demonstrating that "counsel's deficient performance was prejudicial, that is, there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant."  (*People*

*v. Sepulveda* (2020) 47 Cal.App.5th 291, 301.)  Given the trial court's explicit remarks about Rodriguez's financial circumstances, including Rodriguez's potential earning capacity while in custody, and the trial court's refusal to impose the maximum possible fines and fees, it is not reasonably probable that the trial court would have declined to impose the $630 in additional fees or would have imposed a smaller restitution fine had counsel objected that Rodriguez did not have the ability to pay.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

MILLER
Acting P. J.

SLOUGH
J.