Filed 4/22/22  P. v. Astengo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075467 |
| v. | (Super.Ct.No. FSB17002847) |
| JUAN VENTURA ASTENGO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Colin J. Bilash, Judge.  Affirmed with directions.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I. INTRODUCTION

In July 2017, the San Bernardino County Sheriff's Department received an electronic storage device alleged to contain child pornography. Upon investigation, they discovered numerous photographs depicting an adult man engaged in various forms of sexual contact with a toddler over the course of multiple days. As a result, a jury found defendant guilty of three counts of sexual intercourse or sodomy of a child 10 years of age or younger (Pen. Code, § 288.7, subd. (a), counts 1, 3, & 5);[1] one count of sexual penetration of a child 10 years of age or younger (§ 288.7, subd. (b), count 7); and 11 counts of committing a lewd act upon a child under 14 years of age (§ 288, subd. (a), counts 2, 4, 6, 8, & 9-15). In a bifurcated proceeding, the trial court found true a special allegation that defendant had a prior conviction qualifying as a strike. Defendant was sentenced to an aggregate term of 180 years to life and an additional 44 years in state prison, which included the imposition of consecutive sentences on all counts.

Defendant appeals, arguing: (1) insufficient evidence supported his convictions on counts 1, 3, 5, and 7 (§ 288.7, subds. (a) & (b)); (2) the trial court erred in giving an instruction that classified count 7 (§ 288.7, subd. (b)) as a general intent crime; (3) the trial court erred in failing to stay punishment on counts 2, 4, 6, and 8 (§ 288, subd. (a)) because those convictions were based upon the same physical act alleged as the basis for counts 1, 3, 5, and 7; and (4) the matter should be remanded for sentencing because the trial court misunderstood the scope of its discretion in imposing consecutive sentences.

---

[1] Undesignated statutory references are to the Penal Code.

We conclude that sufficient evidence supports defendant's convictions, the alleged instructional error by the trial court was harmless, and the record does not support defendant's contention that the trial court misunderstood the scope of its discretion when sentencing defendant. However, we agree that imposition of defendant's sentences on counts 2, 4, 6, and 8 must be stayed pursuant to section 654, and we modify his sentence accordingly.

## II. FACTS AND PROCEDURAL HISTORY

### A. *Facts and Charges*

In July 2017, the San Bernardino County Sheriff's Department received an electronic storage device alleged to contain child pornography. Upon investigation, they discovered numerous photographs depicting an adult man engaged in various forms of sexual contact with a toddler.

As a result, defendant was charged with three counts of sexual intercourse or sodomy of a child 10 years of age or younger (§ 288.7, subd. (a), counts 1, 3, & 5); one count of sexual penetration of a child 10 years of age or younger (§ 288.7, subd. (b), count 7); and 11 counts of committing a lewd act upon a child under 14 years of age (§ 288, subd. (a), counts 2, 4, 6, 8, & 9-15). It was also alleged that defendant had a prior conviction qualifying as a strike.

### B. *Relevant Evidence at Trial*

#### 1. Testimony of A.L.

A.L. testified that she is the mother of four children, but all four have been removed from her custody. Her oldest child, N.S., was born in 2013. In 2016, A.L.'s

3

sister, C.L., would occasionally babysit N.S. However, A.L. always left N.S. with C.L. at their father's home, and A.L. was never told that her sister took N.S. out of their father's home on any of these occasions.

2. Testimony of C.L.

C.L. testified that she is the sister of A.L. She entered into an immunity agreement with the district attorney's office to testify but was presently in custody for unrelated offenses. C.L. first met defendant when she was 17 years of age and began purchasing drugs from him. When she turned 18, she began exchanging sexual favors in return for drugs from defendant. The two agreed they would record their sexual activities.

C.L. testified that during sexual activity with defendant, she would often make sexually suggestive comments regarding N.S. as well as her own two children. She believed defendant enjoyed engaging in such dialogue and that defendant found such comments arousing.

On some occasions, C.L. would bring N.S. into the room while she had sex with defendant. C.L. admitted that she and defendant took photographs of N.S., but she claimed that defendant never intended to engage in sexual contact with N.S. Instead, C.L. expressed the belief that any contact that might have been depicted in a photograph was initiated by N.S. and that N.S. was merely trying to mimic C.L.'s actions. She claimed that defendant did not engage in any penetration of N.S. during these incidents.

C.L. estimated this type of contact occurred approximately three times in the summer of 2016, and that she took approximately three videos and 20 photographs on

4

these occasions. However, C.L. also claimed she was on drugs at the time and could not explain why she would have taken photographs of these incidents.

3. Photographic Evidence

A San Bernardino County Sheriff's Department detective testified that in July 2017, an unidentified individual provided law enforcement with a micro SD card[2] and reported that the card contained child pornography. The detective discovered that the micro SD card contained multiple photographs and videos that depicted a man's erect penis next to a toddler. The photographs and videos did not depict the man's face, but they revealed distinct scars along the man's abdomen and a freckle pattern on his hand. Some of the photographs depicted almost the entirety of the toddler's facial image.

The same micro SD card also contained videos of a male adult and female adult engaging in sexual intercourse. These videos depicted the facial image of both participants and, based upon previous encounters, the detective identified defendant and C.L. as the two adults. In several of the videos, defendant and C.L. can be heard discussing performing sexual acts upon N.S, as well as C.L.'s daughter and a third child.

Twelve of the photographs that were stored on the micro SD card were displayed for the jury. The detective described several of these photographs as depicting an erect penis "inserted" into the vagina of the toddler. The detective also described one of the photographs as depicting a finger "inserted" into the anus of the toddler. The time stamps associated with each photograph suggested they were taken on July 16, 25, and 30, 2016.

_____

[2] A micro SD card is a small electronic chip that can be connected to mobile phones to store data.

The jury was also shown photographs depicting defendant fully nude, as well as depicting defendant's hands and penis.

4. Testimony of Examiner

A registered nurse testified that she works as a forensic nurse clinician for the Children's Assessment Center in San Bernardino. She explained that the center conducts forensic examinations of children who have been victims of child abuse. She performed an examination of N.S. in July 2017, but she found no signs of physical trauma. However, she explained that it was possible for penetration of N.S.'s vagina or anus to have occurred without lasting physical signs of trauma a year later. She was shown the photographs previously presented to the jury and opined that she would not expect lasting signs of trauma for the type of penetration depicted in these photographs.

5. Fingerprint Evidence

Another detective with the San Bernardino County Sheriff's Department testified that she works within the scientific investigations division of the sheriff's department and is a latent fingerprints examiner. She compared a fingerprint and a palm print taken from two of the photographs previously shown to the jury and determined that both prints matched those obtained from defendant at the time he was taken into custody.

6. Defendant's Prior Admissions

Another detective with the San Bernardino County Sheriff's Department testified that she interviewed defendant during the course of their investigation. During this interview, defendant admitted to having a sexual relationship with C.L. in the summer of 2016. He was also shown a photograph taken from the same micro SD card that stored

6

the photographs of N.S. and admitted he was depicted in that photograph. However, when he was shown the photographs depicting N.S., defendant denied being depicted in any of those photographs.

7. Defendant's Testimony

Defendant testified in his own defense. He admitted to having a sexual relationship with C.L., but he denied knowing, seeing, or ever being in the presence of N.S. He testified that C.L. was lying when she claimed to have taken photographs depicting him with N.S. He further denied that the hand depicted in the photographs reviewed by the fingerprints examiner belonged to him. Against the advice of counsel, defendant insisted on testifying further, but was stopped by the trial court when defendant attempted to claim the violation of various rights at the time of his arrest and during the course of the proceedings in the case. As a result of this additional testimony, defendant was forced to admit on cross-examination that he previously pled guilty to assault with a deadly weapon and suffered a prior conviction for domestic violence.

C. *Verdict and Sentence*

The jury returned a guilty verdict on all counts. In a bifurcated proceeding, the trial court found true the allegation that defendant was previously convicted of a qualifying strike offense. Defendant was sentenced to an aggregate term of 180 years to life and an additional 44 years in state prison, comprised of: (1) three consecutive terms of 50 years to life for the three counts of sexual intercourse or sodomy of a child 10 years of age or younger (§ 288.7, subd. (a), counts 1, 3, & 5), representing the statutory terms, doubled for the strike prior; (2) a consecutive term of 30 years to life for sexual

7

penetration of a child 10 years of age or younger (§ 288.7, subd. (b), count 7),

representing the statutory term, doubled for the strike prior; and (3) 11 consecutive terms

of four years for each of the remaining counts of committing a lewd act upon a child

under 14 years of age (§ 288, subd. (a), counts 2, 4, 6, 8, & 9-15), representing one-third

the middle term, doubled for the strike prior.

III.  DISCUSSION

A. *Sufficient Evidence Supports Defendant's Conviction on Counts 1, 3, 5, and 7*

On appeal, plaintiff contends the evidence was insufficient to support his

convictions on counts 1, 3, 5, and 7.  The parties do not dispute that counts 1, 3, 5, and 7

required the jury to find defendant engaged in an act of penetration in order to support a

conviction;[3] do not dispute the legal definition of penetration for the purpose of these

offenses;[4] and do not dispute that the People presented a separate photograph purporting

---

[3]  Counts 1, 3, and 5 alleged a violation of section 288.7, subdivision (a), which requires that defendant engaged in an act of sexual intercourse or sodomy with the victim.  Count 7 alleged a violation of section 288.7, subdivision (b), which also requires that defendant engaged in sexual penetration of the victim "as defined in section 289." (§ 288.7, subd. (b).)  The definition of penetration for each of these offenses is identical. (*People v. Mendoza* (2015) 240 Cal.App.4th 72, 79 [In the context of section 288.7, subd. (a), "[s]exual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis," and "[s]odomy similarly requires penetration, however slight."]; § 289, subd. (k)(1) [" 'Sexual penetration' is the act of causing the penetration, however slight, of the genital or anal opening of any person . . . ."].)

[4]  The physical act required to meet the legal definition of penetration for each of these offenses is identical. (*People v. Mendoza, supra*, 240 Cal.App.4th at p. 79 [In the context of section 288.7, subd. (a), "[s]exual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis," and "[s]odomy similarly requires penetration, however slight."]; § 289, subd. (k)(1) [" 'Sexual penetration' is the

*[footnote continued on next page]*

to depict the commission of each charged offense as direct evidence of the crimes.[5] We conclude the photographs constitute substantial evidence in support of the jury's verdict and decline to reverse defendant's convictions for insufficiency of the evidence.

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one. ' "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Smith* (2005) 37 Cal.4th 733, 738-739; see *People v. Cravens* (2012) 53 Cal.4th 500, 507-508.) " 'In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]" [Citation.] A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

---

act of causing the penetration, however slight, of the genital or anal opening of any person . . . ."].)

[5] Specifically, the People presented image Nos. 501, 507, 509, and 478 in support of counts 1, 3, 5, and 7, respectively.

Here, defendant does not dispute that the evidence offered at trial was sufficient for the jury to conclude he was the man depicted in the photographs but argues that the photographs were insufficient to allow the jury to conclude that he engaged in the physical act of penetration. However, the interpretation of the photographs in question was highly disputed at the time of trial. Notably, in closing arguments, the prosecutor argued the photographs depicted the very act of penetration while defense counsel argued that the "angle of the picture" made it difficult to ascertain whether penetration was actually being depicted. Even now on appeal, both parties contend that the photographs "speak" for themselves, yet they take opposite views of what is depicted. This is precisely the type of factual dispute that the jury must resolve. (See *People v. Leon* (2015) 61 Cal.4th 569, 601 ["[B]ecause the surveillance video was played for the jury, jurors could make up their own minds" whether defendant was the individual depicted.]; *People v. Tran* (2020) 50 Cal.App.5th 171, 189 [Jurors are ordinarily "capable of watching a surveillance video and understanding what they see."].)

Our review on appeal does not involve substituting our own interpretation of the evidence for that of the jury. As our Supreme Court has repeatedly explained, reversal on the ground of insufficiency of the evidence " ' "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " ' " (*People v. Manriquez* (2005) 37 Cal.4th 547, 577; see *People v. Bolin* (1998) 18 Cal.4th 297, 331.) A "defendant does not defeat the sufficiency of the evidence merely by offering 'competing inferences he wishes the jury had drawn' " (*People v. Disa* (2016) 1 Cal.App.5th 654, 667, fn. 9); and "[t]he existence of possible

10

exculpatory explanations, whether they are simply suggestions not excluded by the evidence or even where they could be reasonably deduced from the evidence, could not justify [a reviewing court's] rejecting the determination of the trier of fact . . . ." (*People v. Redrick* (1961) 55 Cal.2d 282, 290; see *People v. Abilez* (2007) 41 Cal.4th 472, 504 [" ' "[T]he opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' "].)

This court has reviewed the photographs in question. Having done so, it is apparent that at least one reasonable interpretation of the photographs is that they depict the physical act of penetration. Thus, to the extent the jury adopted that very interpretation, the photographs constitute direct evidence of the charged offenses and are themselves substantial evidence in support of defendant's convictions. Given this conclusion, we need not address the additional, circumstantial evidence the People also claim supports the convictions.

B. *The Instructional Error Alleged by Defendant Was Harmless*

Plaintiff also argues the trial court erred when it instructed the jury that a violation of section 288.7, subdivision (b), constituted a general intent crime with respect to count 7. The People argue that the question of whether section 288.7, subdivision (b), constitutes a specific intent crime when based on sexual penetration is unresolved and subject to a split of authority. While the weight of authority supports defendant's position, we need not resolve this issue because, even assuming the trial court erred in including count 7 in a list of general intent crimes, any such error was harmless in light of the more specific instructions related to count 7.

11

"In a criminal case, the trial court has a sua sponte duty to instruct the jury on all general principles of law relevant to the issues raised by the evidence. . . . [¶] 'A claim of instructional error is reviewed de novo. . . . An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law. . . . The challenged instruction is viewed "in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner." ' " (*People v. Pettigrew* (2021) 62 Cal.App.5th 477, 497.)

"Alternative-theory error" occurs when the trial court "instructs on two theories of guilt, one correct and the other incorrect." (*People v. Aledamat* (2019) 8 Cal.5th 1, 7, 9.) Additionally, where the incorrect theory "is incorrect because it is contrary to law," it is considered a " ' "legally inadequate theory," ' " and "a higher standard must be met for the error to be found harmless." (*Ibid.*) Such error must be prejudicial under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*) to warrant reversal. (*Aledamat*, at p. 9.) Under this standard, "reversal is required unless the error was harmless beyond a reasonable doubt" (*People v. Hernandez* (2011) 51 Cal.4th 733, 744-745) or, stated alternatively, it must be " ' "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" ' " (*People v. Pearson* (2013) 56 Cal.4th 393, 463).

Here, plaintiff's claim of error is premised upon the fact that the trial court listed count 7 among the offenses requiring a general criminal intent when instructing the jury. However, the instruction goes on to explain that the act "required will be explained in

12

these instructions for those crimes"; and, with respect to the specific instruction pertaining to count 7, the jury was instructed that "sexual penetration means penetration . . . for [the] purpose of sexual abuse, arousal or gratification." Thus, the jury was generally instructed that count 7 was a general intent crime, but it later was instructed that it must find defendant harbored the specific intent required for the commission of the offense in order to convict defendant of that offense. Assuming the trial court erred in listing count 7 as a general intent crime,[6] such error constituted alternative theory error subject to the *Chapman* harmless error standard.

Multiple appellate decisions have considered identical circumstances and concluded that any such error was harmless beyond a reasonable doubt. In *People v. ZarateCastillo*, *supra*, 244 Cal.App.4th 1161, the trial court similarly classified section 288.7, subdivision (b), as a general intent crime, but then instructed the jury the offense required an act of penetration done for the purpose of sexual abuse, arousal, or gratification. (*ZarateCastillo*, at p. 1168.) The Court of Appeal concluded that such error was necessarily harmless beyond a reasonable doubt, explaining "the trial court

---

**6** The weight of authority suggests that instructing the jury in this manner was erroneous. (*People v. Saavedra* (2018) 24 Cal.App.5th 605, 613 (*Saavedra*) ["[W]hen . . . the violation of [section 288.7, subdivision (b),] is based on sexual penetration, it is a specific intent crime."]; *People v. Ngo* (2014) 225 Cal.App.4th 126, 157 (*Ngo*) ["[S]exual penetration with a child is a specific intent crime under section 288.7, subdivision (b)."]; *People v. ZarateCastillo* (2016) 244 Cal.App.4th 1161, 1168 (*ZarateCastillo*) [trial court erred "in informing the jury that the crime of sexual penetration of a child 10 years old or younger . . . [is a] general intent crime[]"].) Relying on *People v. Dillon* (2009) 174 Cal.App.4th 1367, the People contend the issue is unresolved. However, the parties in that case did not dispute the issue of whether the charged offense required specific or general intent. (*Dillon*, at p. 1380.) Nor does it appear that any other published decision has followed the language set forth in *Dillion*, upon which the People now rely.

13

actually instructed the jury on the specific intent required . . . despite failing to classify the crimes as specific intent crimes earlier in its instructions. . . . [T]here was nothing in the general intent/specific intent portion of the trial court's instructions that suggested to the jurors that they were *not* to follow the later portions of the instructions telling them the specific intent—referred to in the instructions as 'purpose'—that was required to find sexual penetration. . . . [;] the later instructions specific to those crimes expressly described the 'purpose' of the act of penetration required to commit the crimes, and there is simply no reason to believe that the jury would have disregarded the explicit direction of the later instructions . . . ." (*Id.* at pp. 1168-1169.)

Likewise, in *Ngo*, *supra*, 225 Cal.App.4th 126, the trial court initially gave a general intent instruction regarding an alleged violation of section 288.7, subdivision (b), but later gave "CALCRIM 1128, which defines sexual penetration as doing so 'for the purpose of sexual arousal, gratification, or abuse,' thereby setting forth the required specific intent." (*Ngo*, at pp. 161-162.) The Court of Appeal concluded that, "[e]ven under the *Chapman* standard . . . we would find no prejudice. . . . To convict defendant . . . , the jury must have found beyond a reasonable doubt that he at least harbored the intent to commit the actus reus of penetrating the victim. A more favorable outcome could only arise if a properly instructed juror could have found reasonable doubt that defendant penetrated the victim 'for the purpose of sexual arousal, gratification, or abuse.' There are very few circumstances in which a person would intentionally penetrate another person *without* such a purpose." (*Ngo*, at p. 163.)

Finally, in *Saavedra*, *supra*, 24 Cal.App.5th 605, the trial court again included section 288.7, subdivision (b), in a list of general intent offenses but gave CALCRIM No. 1128 setting forth the specific intent required to find defendant guilty of that offense. (*Saavedra*, at pp. 615-616.)  The Court of Appeal concluded that any error in doing so was harmless beyond a reasonable doubt because the record contained "no evidence that could rationally lead to a finding the act of penetration . . . was committed for a purpose other than sexual arousal, gratification, or abuse. . . [;] defendant did not contest the element, but rather denied any culpability."  (*Id.* at p. 616.)

We agree with the reasoning in each of these cases.  Like *ZarateCastillo*, nothing in the general intent instruction here would suggest to the jury that it was to ignore the more specific instruction pertaining to count 7, which required it to find that defendant committed the offense with the requisite specific intent in order to find him guilty. Indeed, the general intent instruction went so far as to advise the jury that the specific act required to convict would be described in the instruction pertaining to the specific offenses.

More importantly, even if the jury had somehow been misled to apply the general intent instruction with respect to count 7, that instruction would still have required the jury to find beyond a reasonable doubt that defendant intentionally performed the physical act of penetration.  As pointed out in *Ngo* and *Saavedra*, there are very few circumstances in which a person would intentionally penetrate another for a purpose other than sexual gratification, arousal, or abuse; and a jury could not rationally find

15

otherwise, absent some evidence to suggest an alternative intent.[7]  Like in *Saavedra*,

defendant offered no evidence to suggest an alternative intent but instead denied any

culpability, claiming that he never met N.S. and was not the person depicted in the

photographs.[8]

Under the facts of this case, no rational jury could have found the specific intent

element unproven once it found defendant intentionally committed the physical act of

penetrating N.S.  As such, even if the trial court erred in initially including count 7 in a

list of general intent offenses, any such error was harmless beyond a reasonable doubt

and does not warrant reversal.

C.  *Defendant's Sentence Must Be Modified To Stay Punishment on Counts 2, 4, 6, and 8*

Defendant also contends that the trial court erred in failing to stay punishment

under section 654 for four counts of committing lewd acts (§ 288, subd. (a), counts 2, 4,

6, & 8), since each of these counts was based upon the same physical acts that supported

his convictions on counts 1, 3, 5, and 7.  The People concede, and we agree, that the

sentences imposed for counts 2, 4, 6, and 8 must be stayed.

Generally, section 654 prohibits multiple punishments for a single act or an

indivisible course of conduct.  (*People v. Leonard* (2014) 228 Cal.App.4th 465, 498.)

"Whether a defendant may be subjected to multiple punishment under section 654

---

[7]  This is particularly true where, as here, counts 1, 3, and 5 all involved penetration with defendant's penis.

[8]  While C.L. testified that any interaction between defendant and N.S. was initiated by N.S. and not defendant, she equally denied that the physical act of penetration ever occurred.

16

requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)

" 'The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination.' [Citation.] A court's expressed or implied findings on this point must be upheld if supported by substantial evidence." (*People v. Kopp* (2019) 38 Cal.App.5th 47, 91, review granted Nov. 13, 2019, S257844; see *People v. Leonard*, *supra*, 228 Cal.App.4th at p. 499.)

As the People concede, the four photographs submitted in support of counts 1, 3, 5, and 7 were the same photographs submitted in support of counts 2, 4, 6, and 8 and each photograph "depicted a single act captured during a single moment." Where the separate convictions are premised upon the same physical act, section 654 precludes the imposition of multiple punishment.

We observe that during the pendency of this appeal, the Legislature amended section 654 to provide the trial court with discretion to select which punishment to impose when multiple punishments are prohibited. (§ 654, subd. (a).) "Absent evidence

17

to the contrary, amendments to statutes that . . . vest in trial courts the discretion to impose a lesser penalty . . . apply to all defendants whose judgments are not final as of the amendment's effective date." (*People v. Jones* (2019) 32 Cal.App.5th 267, 272.) Nevertheless, remand is not required if "the record reveals a clear indication that the trial court would not have reduced the sentence even if at the time of sentencing it had the discretion to do so." (*People v. Almanza* (2018) 24 Cal.App.5th 1104, 1110.)

Here, at the time of sentencing, the trial court explicitly stated that there was "absolutely no reason" to sentence defendant to "one day less than this defendant deserves" and that there should be "no mitigation in any way to lessen the sentence by even one day." Such statements clearly indicate the trial court's intent to impose the most severe sentence available and that it would have reached the same conclusion regardless of whether it had discretion to impose a lesser punishment under the newly amended section 654. As a result, remand for resentencing is unnecessary, and the proper remedy is to modify the judgment to provide that defendant's four-year sentences imposed on counts 2, 4, 6, and 8 (committing lewd acts, § 288, subd. (a)) are stayed.

D. *The Record Does Not Show Any Reason To Remand for New Sentencing*

Finally, defendant contends the matter must be remanded for resentencing because the trial court abused its discretion in imposing consecutive sentences on all counts. In making this claim, defendant does not argue that a decision to impose consecutive sentences would not be supported by substantial evidence but instead claims the trial court misunderstood the scope of its discretion because it purportedly believed that it had

18

no discretion to select concurrent sentences under section 1170.12.  We find no support in the record for this claim.

"It is well established that a trial court has discretion to determine whether several sentences are to run concurrently or consecutively.  [Citation.]  In the absence of a clear showing of abuse, the trial court's discretion in this respect is not to be disturbed on appeal."  (*People v. Bradford* (1976) 17 Cal.3d 8, 20.)  An "abuse of discretion occurs where the trial court was not 'aware of its discretion'. . . ."  (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)  However, to meet his burden on appeal, "the defendant must 'affirmatively demonstrate that the trial court misunderstood its sentencing discretion.' "  (*People v. Lee* (2017) 16 Cal.App.5th 861, 866.)  As we explain, defendant has failed to meet this burden here.

First, defendant has cited nothing in the record that suggests the trial court felt constrained with respect to its decision to impose consecutive sentences.  While defendant asserts that "the trial court's statements at sentencing indicate it was unaware it could impose concurrent sentences under the three strikes law on some of the counts," and "the trial court's remarks at sentencing did not reflect it understood it could order some of the sentences to run concurrently," he cites to nothing in the record in support of these assertions.  In essence, defendant suggests that this court should infer that the trial court misunderstood the scope of its discretion because of the absence of an affirmative statement otherwise.  However, "remand is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion.  Error may not be presumed from a silent record," and " ' "[a] trial court is presumed to have been aware of

19

and followed the applicable law." ' " (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1229; see *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527 ["[W]e cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of [its] discretion."].)  Thus, the absence of an affirmative statement by the trial court does not, in itself, suggest an abuse of discretion requiring remand.

Second, the statements of the trial court actually suggest that the trial court fully understood the discretionary nature of its sentencing choices.  Specifically, the trial court expressly addressed the issue of consecutive sentences, stating:  "As to the consecutive sentences, . . . this is an incredibly horrendous crime.  There is absolutely no reason in this Court's mind one day less than this defendant deserves for the conduct in this case.  The amount of abuse imposed on this child is about as incredibly upsetting as could be and legally offensive as could be.  No mitigation in any way to lessen the sentence by even one day."  It then stated that it was choosing to impose the determinate sentences consecutively "based on the nature of the offenses," and that it was choosing to impose the indeterminate sentences consecutively "for the reason the court stated before."  Thus, the trial court expressly stated its reasons for selecting consecutive, instead of concurrent, sentences.  In doing so, it made no statements referencing the three strikes law or otherwise suggesting that it was prohibited from selecting a concurrent sentence.[9]

_____

[9]  In reply, defendant points to a comment by the trial court that it intended to follow the probation report recommendations in order to impose "consecutive terms on all counts 'within the confines of sentencing guidelines,' " and a second comment that " 'there is no digression as to the indeterminate sentences.' "  However, the first comment is nothing more than a neutral statement that does not suggest the trial court felt

*[footnote continued on next page]*

20

Third, the trial court expressly referenced section 1170.12 with respect to other sentencing decisions. Specifically, the trial court stated that defendant's sentences "will be doubled, based on the admission of the prior strike, pursuant to 1170.12." The fact that the trial court expressly referenced the three strikes law with respect to other aspects of its sentencing decision, but declined to do so with respect to its reasons for selecting consecutive sentences, suggests it was not mistaken with respect to the application of the three strikes law as defendant claims.

Additionally, we observe that, even if the trial court misunderstood the scope of its discretion, the record clearly demonstrates that any error in this regard was harmless beyond a reasonable doubt. While " ' "[d]efendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court," ' " remand for resentencing is not required where " 'the record "clearly indicates" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*People v. Flores* (2020) 9 Cal.5th 371, 431-432 [remand not necessary where trial court explicitly stated its intent to impose the most severe sentence available].) As we have already noted, the trial court made multiple statements at the time of sentencing expressing its view that there should be no mitigation to lessen the

restrained in the exercise of its discretion. Notably, immediately prior to this comment, the trial court specifically asked counsel whether they wanted to address any of the findings in the probation report with respect to "the sentence the Court has discretion to impose," clearly suggesting that it understood its sentencing choices were discretionary. The second comment was made in reference to the imposition of indeterminate sentences and not in relation to the selection of consecutive versus concurrent sentences. Thus, neither comment supports defendant's claim on appeal.

defendant's sentence in any way. Such statements clearly indicate the trial court's intent to impose the most severe sentence available and that it would have reached the same conclusion regardless of whether it fully understood that it had discretion to impose a lighter sentence.

We conclude that defendant has not shown an abuse of discretion warranting remand for resentencing. In the face of a silent record, we do not presume the trial court misunderstood the scope of its discretion. More importantly, the statements actually made by the trial court at the time of sentencing do not support defendant's claims; suggest the trial court was fully aware of its sentencing discretion; and also clearly indicate that the trial court would have reached the same conclusion regardless of whether it understood the scope of its discretion. Accordingly, remand for resentencing on this basis is unwarranted.

## IV. DISPOSITION

The judgment is modified to provide that defendant's four-year sentences imposed on counts 2, 4, 6, and 8 (committing lewd acts, § 288, subd. (a)) are stayed pending the completion of service of the sentences on counts 1, 3, 5, and 7, respectively, with the stays to become permanent upon the completion of the sentences on count 1, 3, 5, and 7. The trial court is directed to prepare an amended abstract of judgment reflecting that the sentences for counts 2, 4, 6, and 8 are stayed, not concurrent, to counts 1, 3, 5, and 7, and to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
Acting P. J.

We concur:


RAPHAEL
J.


MENETREZ
J.

23