Filed 11/25/24  P. v. Mendoza CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL MENDOZA,<br><br>    Defendant and Appellant. | D082516<br><br><br>(Super. Ct. No. SCN411058) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert J. Kearney, Judge.  Affirmed.

Patrick Morgan Ford for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Randall D. Einhorn, and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Daniel Mendoza of rape of an unconscious person (Pen. Code,[1] § 261, subd. (a)(4); count 1); attempted forcible rape (§§ 664, 261, subd. (a)(2); count 2); attempted rape of an unconscious person (§§ 664, 261, subd. (a)(4); count 3); and sexual battery by restraint (§ 243.4, subd. (a); count 4).  The court sentenced Mendoza to prison for eight years.

Mendoza appeals, contending that substantial evidence does not support his conviction for count 1, and the court prejudicially erred in admitting evidence of two incidents of uncharged conduct under Evidence Code section 1108.  We conclude that neither of Mendoza's arguments have merit and thus affirm the judgment.

FACTUAL BACKGROUND

*Prosecution*

*Count 1*

On May 25, 2019, Kimberly M. attended her friend Sergio B.'s wedding at a rental house in San Marcos.  Mendoza also was at the wedding. Kimberly had met Mendoza through friends around 2015 or 2016.

Kimberly was drinking throughout the evening.  She had six beers and at least four shots of whiskey.  She later started feeling sick.  She was "coming in and out" and felt "drunk."  She sat down in a chair and the next thing she remembered she was in the bathroom throwing up in the toilet. A few people were in the bathroom with her, including Mendoza and her friend, Omar.  Mendoza was trying to help her and was holding her hair.

The next thing Kimberly knew, she was laying down in a bed.  She woke up when she felt a sensation in her vagina.  She "felt someone's penis inside of [her]."  She could tell it was a penis based on the size, shape, and feeling.  She was on the left side of the bed, lying on her right side at the

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

time.  The penis was going "back and forth" inside of her, and then she felt a wetness.  She heard someone "trying to shush [her] back to sleep" and there was an arm around her.  She sat up.  Her dress was still on, but her underwear were around her knees.  Mendoza was lying beside her on the right side of the bed.[2]  She got out of bed and ran into the bathroom.  She decided to find her belongings and go home.  She walked out of the bathroom and saw Mendoza pulling up and zipping his pants.

Kimberly walked out of the bedroom.  She saw Sergio and asked him to find her belongings.  Kimberly was talking rapidly and kept saying she just wanted to go home.  Sergio found her keys and phone and told her to drive home safely.  She started to drive home and drove into a ditch.  She sent Sergio a text message.  He went outside to help, and Kimberly started crying.  She told him that Mendoza raped her.  Sergio was in shock and gave her a hug.  Kimberly then messaged her friend Marissa Q. to pick her up.

When Marissa arrived, Kimberly was crying.  As they were driving, Kimberly told Marissa that Mendoza "sexually assault[ed]" her.  Marissa convinced Kimberly to report the assault and drove her to the police station.  Kimberly was interviewed by police.  During the initial interview, Kimberly's voice was cracking and she was crying as she reported the incident.  She was interviewed later by police, and she was still upset and crying.

Kimberly underwent a SART (Sexual Assault Response Team) exam.  The SART nurse found evidence of physical trauma in Kimberly's vaginal

---

[2]    At trial, a witness testified on cross-examination that Kimberly told her that when she woke up, Mendoza was on top of her.  On redirect, the prosecutor asked the witness, "Do you remember at all what [Kimberly's] language was or was it just on top of me?"  The witness responded, "That he was inside of her."  In addition, the initial interviewing officer testified that Kimberly told her that Mendoza was on top of her.

area and redness or abrasion to her cervix. Kimberly disclosed to the SART nurse that she had sex with her ex-boyfriend within five days before Mendoza assaulted her. A DNA swab from Kimberly's mons pubis later tested against a sample taken from Mendoza indicated moderate support for inclusion but a "sperm fraction" swab taken from the same area excluded Mendoza as a contributor.

Counts 2 through 4

On November 8, 2019, Mendoza went to a party at the home of Cynthia D. and her boyfriend, Andres B., where everyone was drinking. During the party, Mendoza asked another guest, Giancarlo S., to go with him to buy beer. Mendoza said he wanted to get more beer to get the girls drunk so he could "hook[ ] up with them."

When they got back to the party, Giancarlo fell asleep on the floor in the living room. Giancarlo woke up and saw Mendoza in the kitchen being "touchy" with Cynthia, who appeared drunk. Giancarlo later confronted Mendoza, and Mendoza told him he was not trying to do anything and would never disrespect Andres or Cynthia.

At some point, Andres went to his bedroom and went to sleep. Cynthia was intoxicated and passed out on the couch in the living room. Giancarlo put a blanket on her and went back to sleep on the floor next to her.

After passing out on the couch, Cynthia came to in the bathroom. She did not know how she got there. Mendoza also was in the bathroom. She was sitting on the toilet, and Mendoza was standing in front of her. He was naked and holding Cynthia's hand on his erect penis. She could see that the bathroom door was locked. Mendoza then lifted her shirt and her sports bra, exposing her nipples. Mendoza's bare hand touched Cynthia's breasts. The next thing she remembered was facing the sink and holding onto the front of

her leggings. Mendoza was standing behind her, trying to pull down her leggings. She did not remember how, but somehow she was able to get out of the bathroom.

Giancarlo woke up to Cynthia screaming and then saw Cynthia and Mendoza come out of the bathroom. Cynthia was hysterical; she was crying. She screamed at Mendoza to get out of her apartment. Mendoza said he was sorry, but he had a crush on her. He then left the apartment.

Giancarlo stayed with Cynthia to help calm her down. At that point, she told him that Mendoza tried to rape her. Giancarlo called his friend, Eduardo R., who had been at the party earlier, to come back and take Cynthia to the police station, but it was closed. So, he took her home. Her mother later took her to the hospital where she made a report and underwent a SART exam. DNA swabs taken from Cynthia's breasts were later tested against a DNA sample taken from Mendoza. There was strong support for inclusion from Cynthia's right breast and moderate support for inclusion from Cynthia's left breast.

*Defense*

Mendoza offered three female witnesses who had known Mendoza for a long time and testified that he was always helpful and never inappropriate.

DISCUSSION

I

COUNT 1

A. Mendoza's Contentions

Mendoza argues that substantial evidence does not support the jury's verdict on count 1 (rape of an unconscious person). To this end, he points out other evidence that he claims undermines Kimberly's testimony that she felt Mendoza's penis inside of her. This evidence includes: (1) Kimberly telling

5

law enforcement that she assumed what was inside of her vagina was a penis "because what else would be inside of [her]"; (2) Kimberly answering "Correct" to the cross-examination questions "you said you just assumed that it was a penis" and ". . . you also said you don't know"; and (3) Kimberly responding with "Yeah" when asked if "[i]t's correct that there could be other things that could be pressing your—inside of you; correct?"

B.  Standard of Review

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)  We do not reassess the credibility of witnesses, and we draw all inferences from the evidence that supports the jury's verdict.  (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.)  Unless it is physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction.  (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)  If substantial evidence supports the verdict, we defer to the trier of fact and do not substitute our evaluation of witness credibility for that of the jury.  (*People v. Snow* (2003) 30 Cal.4th 43, 66.)  If the record supports the jury's findings, our belief that the circumstances might also reasonably support a contrary finding does not warrant a reversal of judgment.  (*People v. Abilez* (2007) 41 Cal.4th 472, 504.)

C.  Analysis

Rape of an unconscious person requires proof of (1) an act of sexual intercourse, (2) where the victim "is at the time unconscious of the nature of the act," and (3) "this is known" by the defendant.  (§ 261, subd. (a)(4).)

"Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis." (*People v. Mendoza* (2015) 240 Cal.App.4th 72, 79.)

Here, Mendoza's substantial evidence challenge focuses on whether the evidence establishes that he penetrated Kimberly's vagina with his penis. We determine that substantial evidence supports the jury's finding that he did so.

At trial, Kimberly testified in detail to the rape that Mendoza committed. She explained that she woke up because she felt what she was sure was a penis inside of her. She could tell it was a penis by the size, shape, and feeling. The penis was going "back and forth" inside of her and then she felt a wetness. When she sat up in bed, she saw Mendoza next to her. Shortly thereafter, she also saw Mendoza pulling up and zipping his pants.

Further, Kimberly explained to the jury she had previously had sex and was familiar with the shape and feeling of a penis "compared to anything else." She also implied that she told the police that she assumed Mendoza's penis was in her because she had never been asked how to articulate how she knew an actual penis was inside of her.

Kimberly then reported the rape to Sergio, who corroborated that Kimberly had told him that Mendoza raped her. Kimberly also told her friend Marissa about Mendoza sexually assaulting her, and Marissa corroborated that report. The SART nurse found evidence of physical trauma in Kimberly's vaginal area.

In addition, Deputy Sheriff James Petruse, who interviewed Kimberly after her encounter with Mendoza, testified that he spoke with Kimberly over "[a] few hours." At one point during the interview, Kimberly, when pressed

to articulate how she knew Mendoza's penis was in her, responded, "I don't know; I don't know." However, during the rest of the interview, Petruse indicated that Kimberly did not express any doubt that Mendoza's penis was inside her. Indeed, Petruse testified that Kimberly "told [him] she felt a penis inside of her."

Nonetheless, Mendoza argues that there was insufficient evidence to support a finding that he had sexual intercourse with Kimberly, relying on Kimberly's statement to police that she assumed what was inside of her was a penis. Therefore, Mendoza claims that Kimberly could have been penetrated by something else, like a finger. And Mendoza emphasized that there were no traces of his sperm found on Kimberly. However, the jury heard this evidence, found Kimberly credible, and concluded that Mendoza had sexual intercourse with her. By pointing out the evidence that calls into question Kimberly's direct trial testimony or suggests that a different inference should be drawn, Mendoza is merely asking us to reweigh the evidence. That is not our role in a substantial evidence review. (See *People v. Stewart* (2000) 77 Cal.App.4th 785, 790 ["In making our determination, we do not reweigh the evidence; the credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact."].)

In short, Kimberly testified that Mendoza had sexual intercourse with her. She further testified that she knew it was Mendoza's penis in her because she is familiar with the shape, size, and feeling of a penis. Kimberly's testimony did not describe an event that was physically impossible or inherently improbable; it was sufficient to support Mendoza's conviction under count 1. (See *People v. Young, supra,* 34 Cal.4th at p. 1181.)

## II

## EVIDENCE OF UNCHARGED ACTS

A. Mendoza's Contentions

Mendoza asserts the trial court prejudicially erred by admitting evidence of two incidents of uncharged sexual offenses under Evidence Code sections 352 and 1108 to establish Mendoza's propensity to commit the charged offenses.

B. Background

    1. Pretrial

The prosecutor moved in limine to admit evidence of two uncharged sexual acts by Mendoza under Evidence Code section 1108. Both events involved Mendoza's involvement with victims who were unconscious and/or intoxicated. In the first incident, Mendoza was found in a locked bedroom, wearing only his boxers, and a fully clothed woman was passed out on the bed in that bedroom. In the second incident, Mendoza parked his car in a church parking lot while his passenger, a woman, was intoxicated and had fallen asleep. He moved close to her and tried to pull her close to him multiple times. He eventually drove the woman home.

The prosecutor argued that the circumstances surrounding the uncharged sexual acts were substantially similar to the current offenses, in that Mendoza would find a heavily intoxicated female, would isolate himself with her, wait for the female to fall asleep or pass out, and then try to initiate sex or some sort of sexual conduct with her. The prosecutor observed that the two uncharged acts were both within a year or two of the charged offenses. The prosecutor also maintained that the probative value of the uncharged acts was not outweighed by the prejudicial effect because the facts of the uncharged acts were less egregious than the circumstances surrounding the

9

charged offenses. Mendoza moved to exclude evidence of his uncharged sex offenses, arguing the evidence was speculative and more prejudicial than probative.

The court held an Evidence Code section 402 hearing in which witnesses testified about the two events.[3] After testimony of the incident wherein Mendoza was found wearing only his boxers in a locked room with an unconscious woman, the court determined that "one could find by a preponderance that it was either the intent to commit rape or sexual battery[.]" The court then explained that the subject incident was substantially similar to the charged offenses. It also found that the incident was less inflammatory than the charged offenses, there was not a probability that the jury would be confused by the testimony of the uncharged act, evidence of the incident would not consume an undue amount of time, and the uncharged incident occurred within a contemporaneous time frame to the charged offenses.

The next day, the court heard testimony about the church parking lot incident. At the conclusion of that testimony, the court observed:

> "All right. I do find that the conduct would be consistent with the other three incidents, that there was a sexual intent either—well, she described a sexual battery. Could be an attempt to do further things. And I think under [Evidence Code section] 352—this is not based on the factors I decided yesterday. I don't think that this is prejudicial unduly or inappropriately, as compared to the charged counts under the [Evidence Code section] 1108 situation."

---

[3]    The hearing took place over two days.

Thus, the court separately considered each of the uncharged incidents and determined that both were admissible under Evidence Code sections 1108 and 352.

2. Trial

At trial, Athena M. and Omar L. testified about the two uncharged incidents. Their testimony at trial was consistent with their testimony at the Evidence Code section 402 hearing.

In October 2017, Athena was at a party in San Marcos where she was drinking. Mendoza, who was Athena's friend, also was at the party. Athena and a friend decided to leave the party and took an Uber to Athena's house. Athena was intoxicated at that time. When they arrived at Athena's house, Athena saw that Mendoza and a group of males they had just met at the party had followed them home. Mendoza was in his car, and the other males were in another car. The group of males were trying to get Athena and her friend to go with them to another party. Mendoza convinced Athena to ride with him to the party.

Athena sat in the front passenger seat and fell asleep. She woke up because she felt someone close to her face. Upon waking up, Athena noticed they were parked in a large church parking lot. Athena asked Mendoza why they were parked there. Mendoza said he pulled over because he thought he saw a police officer and got scared. Athena did not see a police car and asked Mendoza to take her home. Mendoza agreed, and Athena fell asleep again. She woke up when she felt Mendoza touching the left side of her upper torso, underneath the armpit. They were still in the parking lot. She felt uncomfortable, yelled at him, and told him to take her home. Mendoza said he would take Athena home. She put her head on the window and fell asleep again. She then felt him "tugging" at the left side of her body and woke up.

11

She told him that if he did not take her home, she was going to call an Uber. Mendoza started the car and took her home.

Omar testified that in 2018 or 2019, he was at a party with a group of people. Mendoza was at the party as well. One of the women that Omar went to the party with drank too much and blacked out. Some other women put the unconscious woman in a bedroom to sleep. About an hour later, some of the women "started asking where [Mendoza] was." So, the group started looking for him with the women looking inside the house, and the men looking outside. The men did not find Mendoza outside. The women found the door to the bedroom where they had placed the unconscious woman was locked; thus, they started "banging on the bedroom door" for three to five minutes. Omar could see through an outside window into the bedroom and saw Mendoza standing inside the bedroom. Mendoza's eyes were "going up and down" like he was "looking for something to do or, like, something—to get out." Also, Mendoza was not wearing a shirt or pants. He was just wearing his boxers. Mendoza unlocked the door, and some of the women entered the room and then carried out the unconscious woman to a car. She did not appear to be disheveled or look like her clothes were taken off her.

In addition, Omar testified that, sometime in 2017 or 2018, "the day [after] [they] had [all] gone drinking," Athena told him about an incident with Mendoza, after which, she "wasn't feeling herself as a woman, like, clean or after sex[.]" Omar later reiterated that Athena had told him that she felt like she had had sex with Mendoza after a party.

During trial, over the objection of Mendoza's counsel, the court instructed the jury with CALCRIM No. 1191A, Evidence of Uncharged Sex Offenses, as follows:

> "The People presented evidence that the defendant
> committed the crime of attempted rape of unconscious

12

woman that were [*sic*] not charged in this case.  This crime is defined for you in these instructions.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses.  Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit rape of an unconscious woman, attempted rape by force, attempted rape of unconscious woman, and sexual battery, as charged here.  If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of rape of unconscious woman, attempted rape by force, attempted rape of unconscious woman, and sexual battery.  The People must still prove each charge beyond a reasonable doubt."

C.  Standard of Review and Applicable Law

Character or disposition evidence is generally inadmissible to prove a defendant's conduct on a specified occasion.  (Evid. Code, § 1101, subds. (a), (b).)  Evidence Code section 1108 "is an exception to the general prohibition against admitting character evidence to prove criminal disposition or propensity."  (*People v. Jandres* (2014) 226 Cal.App.4th 340, 352; accord, *People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).)  It provides:  "In a criminal action in which the defendant is accused of a sexual

13

offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1108, subd. (a).) In enacting this statute, the Legislature found that "evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible without regard to the limitations of Evidence Code section 1101." (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 405; see *People v. Fitch* (1997) 55 Cal.App.4th 172, 179 ["Evidence of a prior sexual offense is indisputably relevant in a prosecution for another sexual offense"].) Section 1108 specifically defines " '[s]exual offense' " as "a crime under the law of a state or of the United States" (Evid. Code, § 1108, subd. (d)(1)), that involves certain listed offenses or types of conduct, including sexual battery and rape of an unconscious person (*id.* at subd. (d)(1)(A); Pen. Code, §§ 243.4, 261, subd. (a)(4)(A)).

In determining whether to admit propensity evidence under Evidence Code section 1108, a trial court weighs several factors: "(1) whether the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show the defendant did in fact commit the charged offense; (2) whether the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or distract the jurors from their main inquiry, e.g., whether the jury might be tempted to punish the defendant for his [or her] uncharged, unpunished conduct; and (5) whether admission of the propensity evidence will require an undue consumption of time." (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1117.)

14

"[Evidence Code s]ection 352 articulates the general rule that '[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*People v. Erskine* (2019) 7 Cal.5th 279, 296.) " 'By subjecting evidence of uncharged sexual misconduct to the weighing process of [Evidence Code] section 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. [Citation.] This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence.' " (*Falsetta, supra*, 21 Cal.4th at pp. 917–918.) We will not disturb that ruling on appeal, absent a showing that the court exercised its discretion in an "arbitrary, capricious, or patently absurd manner." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.)

D. Analysis

Here, Mendoza raises two challenges to the admission of the uncharged acts evidence. First, he contends the prosecutor failed to "clearly identify the relevant qualifying offense [Mendoza] had committed in the uncharged acts." In other words, neither uncharged act satisfied all the elements of any of the enumerated offenses set forth in Evidence Code section 1108, subdivision (d)(1)(A). Second, Mendoza argues the trial court erred in finding the subject evidence admissible under Evidence Code section 352. Although we find no merit in the latter argument, the former is well taken.

Section 1108 authorizes admission of certain evidence only if the conduct described by that evidence amounts to a "crime." (§ 1108,

subd. (d)(1).)  Indeed, the statute enumerates the specific crimes that qualify. (*Id.*, subd. (d)(1)(A).)  The People refer to both uncharged acts as "attempts to commit rape of an unconscious person in violation of section 261, subdivision (a)(4)" and, as such, they both "undisputedly qualify as qualifying offenses under Evidence Code section 1108."  However, the People's argument assumes that the two uncharged acts, even if all the facts are believed by the jury, could constitute attempted rape of an unconscious person.  Tellingly, beyond this assumption, the People do not offer any argument, specifically considering the evidence of the uncharged acts, explaining how that evidence proves an attempted rape of an unconscious person.  Thus, the People engage in no elements analysis.  Rather, they argue that it was not the trial court's task to determine whether the evidence of the uncharged acts constituted a sexual offense.  According to the People, the trial court merely had to determine if the evidence was probative, and then the jury had to consider whether the evidence was sufficient to show the attempted rape of an unconscious person.[4]

The problem with the People's analysis of Evidence Code section 1108 is that it ignores a fundamental requirement of that statute.  Evidence Code section 1108 provides an exception to the general prohibition against character evidence (*id.*, § 1101), if three conditions are met:  (1) the defendant is charged with a sexual offense; (2) the evidence sought to be admitted must be of "another sexual offense or offenses;" and (3) Evidence Code section 352 does not render the proffered evidence inadmissible.  (*Id.*, § 1108, subd. (a).)  Further, the statute explicitly defines the term "sexual offense" and provides specific code sections describing the various offenses.  (*Id.*, subd. (d)(1)(A).)

---

[4]    We are left to guess how the evidence could be probative if the evidence did not prove a prima facia case of one of the enumerated sexual offenses.

Because it is the province of the trial court to determine the admissibility of evidence, it logically follows that the court must determine whether the requirements of Evidence Code section 1108 are met before the other acts evidence can be put before the jury. Indeed, the trial court appears to have engaged in such analysis in allowing the evidence of the uncharged acts. After hearing Omar's testimony, the court determined that "one could find by a preponderance that it was either the intent to commit rape or sexual battery[.]" And after hearing Athena's testimony, the court noted that she "described a sexual battery. Could be an attempt to do further things." Thus, the court determined that the evidence regarding the two uncharged acts, at the very least, could constitute sexual battery if not attempted rape of an unconscious person. However, the court just instructed the jury that the uncharged acts could have constituted attempted rape of an unconscious person and told the jury it could only consider the evidence if it determined that the prosecution proved by a preponderance of the evidence that Mendoza in fact committed the uncharged offenses. We therefore first look at the evidence of the uncharged acts to ascertain if that evidence satisfies all the elements of attempted rape of an unconscious person if we accept the evidence as true.[5]

Rape of an unconscious person in violation of section 261, subdivision (a) is "an act of sexual intercourse accomplished under any of the following circumstances: [¶] . . . [¶] (4) If a person is at the time unconscious of the nature of the act, and this is known to the accused. As used in this paragraph, 'unconscious of the nature of the act' means incapable of resisting

---

[5] We emphasize that we are not weighing the evidence. Instead, we simply are accepting the evidence as true and determining whether it would satisfy the elements of the crime such that the evidence would be admissible under Evidence Code section 1108.

because the victim meets one of the following conditions: [¶] (A) Was unconscious or asleep. . . .' " " 'An attempt to commit rape has two elements: the specific intent to commit rape, and a direct but ineffectual act done toward its commission.' " (*People v. Lee* (2011) 51 Cal.4th 620, 633, quoting *People v. Guerra* (2006) 37 Cal.4th 1067, 1130 (*Guerra*).) "The act must be a direct movement beyond preparation that would have accomplished the crime of rape if not frustrated by extraneous circumstances." (*Guerra*, at p. 1130.) "Proof of even slight acts beyond preparation done in furtherance of the intent to rape will constitute an attempt. [Citations.]" (*Id.* at p. 1132.) "A defendant's specific intent to commit a crime may be inferred from all of the facts and circumstances disclosed by the evidence." (*Id.* at p. 1130.)

We begin by considering the evidence offered by Omar. The fact that Mendoza was found in a locked room with an unconscious woman, and he was wearing only his boxers might suggest that he had the intent to rape the woman. That said, we see nothing in the evidence that shows Mendoza had progressed passed the planning stage of the crime. There was no indication that the unconscious woman's clothes or even a portion of her clothing had been removed or adjusted so that Mendoza would have been able to attempt to engage in sexual intercourse with her. In other words, even if we accept everything that Omar testified to as true, that evidence does not show that Mendoza engaged in some act, beyond preparation, that would have accomplished the crime of rape of an unconscious person had Mendoza not been "frustrated by extraneous circumstances." (See *Guerra, supra*, 37 Cal.4th at p. 1130.) At most, the evidence shows that Mendoza was planning to rape or assault an unconscious woman. It did not show an attempt to do so.

18

Athena's testimony paints a picture that is even further removed from establishing the elements of attempted rape of an unconscious person than Omar's testimony. Both Athena and Mendoza were fully clothed. And although Mendoza was moving close to Athena and trying to pull her close to him, his actions were thwarted by Athena waking up. The evidence does not suggest that had Athena not woken up when she did that Mendoza was able to commit rape. He still had to remove some of Athena's clothing as well as his own. Clearly, the evidence shows, at most, that Mendoza was in the planning stage of committing rape or assault of an unconscious person. There was no attempt.

We observe that the trial court also indicated that both uncharged incidents could have supported the crime of sexual battery. Putting aside the fact that the trial court did not instruct the jury to consider the uncharged acts as potential sexual assaults, we nonetheless conclude that the evidence falls short of establishing a sexual battery.

The elements of sexual battery are (1) a touching (2) of the skin (3) of an intimate part of the victim, (4) against the victim's will, (5) while the victim is unlawfully restrained, (6) for the purpose of sexual arousal, sexual gratification, or sexual abuse. (§ 243.4, subds. (a), (d) & (f).) Misdemeanor sexual battery requires (1) a touching (2) of an intimate part of the victim, (3) against the victim's will, (4) for the purpose of sexual arousal, sexual gratification, or sexual abuse. (*Id.*, subd. (e).) Misdemeanor sexual battery does not require the touching to be of the victim's skin. (*People v. Dayan* (1995) 34 Cal.App.4th 707, 715–716.)

Here, even if a jury were to believe all the evidence presented about the two uncharged acts, it could not find that sexual battery had been committed as a matter of law. There was no evidence offered at trial that Mendoza

19

touched an intimate part of either of the victims. For the unconscious woman in the locked room, there was no evidence offered that Mendoza ever touched the woman. Regarding Athena, the evidence was that Mendoza touched her under the armpit on her upper torso. There is no evidence that he touched an intimate part of Athena's body. Moreover, our analysis does not change if we credit Omar's testimony where he stated that Athena told him that she believed she had sex with Mendoza. It was unclear from Omar's testimony that Athena was referring to the same night in which Mendoza drove her to the church parking lot. Moreover, nothing in Athena's trial testimony could be interpreted as her stating that she believed Mendoza had sex with her on that night.

Our conclusion here that the evidence of the other acts testified to by Athena and Omar did not satisfy the elements of attempted rape of an unconscious person or sexual battery should not be interpreted as our approval of Mendoza's conduct in any way. In fact, his actions appear to be quite odious and follow a distinct pattern.[6] That said, we cannot add words

---

[6] The evidence of the charged crimes and the uncharged acts clearly evidence a pattern. And Evidence Code section 1101, subdivision (b) permits "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ) other than his or her disposition to commit such an act." Evidence of another act, therefore, can be admissible if it is relevant to prove a fact such as motive, opportunity, intent, plan, or knowledge. (Evid. Code, § 1101, subd. (b); *People v. Davis* (2009) 46 Cal.4th 539, 602.) Here, it seems the uncharged acts show Mendoza engages in a pattern of finding an intoxicated female, isolating her, and then taking other unwanted actions toward her. However, the evidence presented in the instant action regarding the uncharged acts falls short of showing any touching that would qualify as sexual battery or any act that would support a finding of attempted rape of an unconscious person.

to a statute or evidence to the record.  And as section 1108 is written, the People failed to provide sufficient evidence that would support a finding that either of the two uncharged acts constituted one of the enumerated sexual offenses under the statute.

However, despite concluding that the evidence of uncharged acts was improperly admitted under Evidence Code section 1108, we will only reverse the judgment if we conclude the error was prejudicial.  A "state law error in admitting evidence is subject to the traditional *Watson*[7] test:  The reviewing court must ask whether it is reasonably probable the verdict would have been more favorable to the defendant absent the error." (*People v. Partida* (2005) 37 Cal.4th 428, 439.)

Here, we conclude it is not reasonably probable that a result more favorable to Mendoza would have been reached had the uncharged evidence been excluded.  The evidence against Mendoza regarding the rape of Kimberly was strong.  It is undisputed that Kimberly was unconscious on a bed in a bedroom.  It is undisputed Kimberly woke up with her underwear pulled down and Mendoza next to her.  Kimberly testified that she was familiar with the feeling of a penis and that Mendoza's penis was inside her. Two other witnesses confirmed that Kimberly told them that Mendoza had raped her.  Although there was some discrepancy whether Kimberly woke with Mendoza on top of her or on the side of her, that difference does not undermine the prosecution's case whatsoever.  Indeed, Mendoza's entire defense hinged on Kimberly's credibility regarding whether Mendoza's penis was inside her.  Evidence of the uncharged acts had nothing to do with Kimberly's testimony that it was Mendoza's penis inside her rather than his fingers or some other object.

---

7      *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).

Likewise, the evidence regarding counts 2 through 4 was overwhelming as well. Giancarlo testified that he saw Mendoza being "touchy" with Cynthia in the kitchen before the bathroom incident. Cynthia appeared intoxicated and later passed out on the couch. Cynthia came to in the bathroom where she was sitting on the toilet with Mendoza standing naked before her. And Mendoza was holding Cynthia's hand on his erect penis. He lifted her shirt and sports bra, exposing her breasts. He then touched her breasts with his hand. DNA evidence supported Cynthia's testimony that Mendoza touched her breasts. The next thing Cynthia remembered was facing the sink and holding onto the front of her leggings. Mendoza was standing behind her and trying to pull down her leggings. Cynthia was able to escape from the bathroom. Giancarlo corroborated Cynthia's testimony that she came running out of the bathroom. Cynthia was crying, hysterical, and yelled at Mendoza to get out of her apartment. Mendoza said he was sorry, but he had a crush on her. Thus, aside from any evidence as to the uncharged acts, there was solid evidence to support Mendoza's convictions for attempted forcible rape, attempted rape of an unconscious person, and sexual battery by restraint with respect to Cynthia.

Further, the jury was instructed that the other crimes evidence was "not sufficient by itself to prove that the defendant is guilty of rape of an unconscious woman, attempted rape by force, attempted rape of an unconscious woman, and sexual battery." The jury was instructed that "The People must still prove each charge beyond a reasonable doubt."

Given the overwhelming evidence and jury instruction, it is not reasonably probable a result more favorable to Mendoza would have been reached had the court excluded evidence of the prior uncharged acts. (See *Watson*, *supra*, 46 Cal.2d at p. 836.)

## DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

KELETY, J.

CASTILLO, J.