Filed 11/5/25  P. v. Hernandez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> VICTOR CAMPUZANO HERNANDEZ, <br><br> Defendant and Appellant. | D083363 <br><br><br> (Super. Ct. No. SCN428656) |

APPEAL from a judgment of the Superior Court of San Diego County, William Y. Wood, Judge.  Affirmed.


Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Eric A. Swenson, Supervising Deputy Attorney General, Christine Y. Friedman and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Victor Campuzano Hernandez of sex crimes against two minor victims including his stepdaughter L.M., as well as one count of inflicting a corporal injury against their mother. As to L.M., among other offenses, defendant was convicted of engaging in sexual intercourse with a child 10 years of age or younger (counts 1 and 2; Pen. Code, § 288.7, subd. (a)).[1] The court sentenced defendant to 260 years to life plus 3 years: an indeterminate term of 25 years to life on count 1, a consecutive term of 25 years to life on count 2, consecutive terms of 15 years to life on counts 3 through 16, and a determinate, consecutive midterm of 3 years on count 17.

Defendant's sole challenge is to the count 1 and 2 convictions. He contends we must reverse them because the record lacks substantial evidence he engaged in sexual intercourse with L.M. when she was 10 years old or younger. We disagree and affirm.

FACTUAL BACKGROUND

L.M. was born in November 2008, and was 14 years old at the time of the October 2023 trial. At the time of the incidents, L.M. lived with defendant, her mother Y.G., and her two siblings who were Y.G. and defendant's biological daughters. Defendant is not L.M.'s biological father,

---

[1] Undesignated statutory references are to the Penal Code. The other convictions as to L.M. were for oral copulation with a child 10 years of age or younger (counts 3 and 4; § 288.7, subd. (b)), rape of a child under age 14 (counts 5-8; § 269, subd. (a)), oral copulation on a child under age 14 (counts 9-12; § 269, subd. (a)), and committing a lewd and lascivious act by force, violence, or fear on a child under age 14 (counts 13-15; § 288, subd. (b)(1)). As to victim M.G., the jury convicted defendant of committing a lewd and lascivious act on a child under age 14 (count 16; § 288, subd. (a)), and as to their mother Y.G., defendant was convicted of inflicting a corporal injury resulting in a traumatic condition (count 17; § 273.5, subd. (a)). Defendant does not challenge these convictions or the related enhancements and aggravating factors found true by the jury and trial court.

but was in her life since she was three years old. Y.G., defendant, L.M. and her siblings lived in a house in Vista for six or seven years until July or October 2021, when they moved to Escondido at the start of L.M.'s seventh grade school year. At the time of trial, they had had lived in Escondido for two years.

Y.G. did not learn about defendant's conduct with L.M. until L.M. underwent a forensic interview in November 2021, just before her 13th birthday. L.M. told the forensic interviewer that she could not remember the first time defendant touched her, but that it was when they lived in Vista. L.M. said that sometimes defendant would rape her; that he would "put his part in [her]." She would obey him because she did not know at the time and thought it was normal. The first time defendant raped L.M. was at the Vista house. L.M. thought it was "just gonna be like every other time, just [defendant putting his part] on me. Not in me, on me," which she described as in between her thighs. She described an incident at the Vista house when she was on the edge of the bed with defendant standing up, and her sister walked in the room. She and the social worker had the following exchange:

"[Social worker]: And . . . what he was doing at that time? He was putting it on you, you said?

"[L.M.]: Yes.

"[Social worker]: When you say on you, where would he put it?

"[L.M.]: In between my thighs.

"[Social worker]: And what would he do when he put it in between your thighs?

"[L.M.]: He'd start his thrusting—the—right where he would go.

"[Social worker]: Oh.

"[L.M.]: Yeah.

3

"[Social worker]: Thrusting, he did that?

"[L.M.]: Yeah."

Thereafter, with the assistance of detectives, Y.G. confronted defendant and recorded the conversations. Defendant told Y.G. that he began inappropriately touching L.M. when she was eight years old. He told Y.G. that he rubbed his penis on L.M.'s vagina and her butt, and would ejaculate on L.M.'s back. As defendant described it, he "put his part on [L.M.'s] part," which Y.G. understood to mean he put his penis on top of L.M.'s vagina, between her thighs. Defendant stated that his part "was outside" and he "never penetrated."

When Y.G. told defendant that L.M. was not saying that but had reported "full on" abuse, he told Y.G.: "I passed my parts—my part . . . by the front, and behind. But there was no penetration, ever." Y.G. asked, "[W]hat would you put in her?" Defendant responded, "Or maybe [L.M.] felt that—that it was—it was penetration." He said, "If I did—if I did penetrate her then it was without me wanting to do it." Y.G. described the frequency as defendant touching L.M. when "he would get angry at me."

At trial, L.M. described the first time defendant touched her, which she thought was in first grade, while they lived in Vista. She was in a pantry when he made her put her mouth on his penis. She recalled once while in Vista defendant tried to put his penis between her inner thighs, near her vagina, while she was standing. She remembered during these incidents that defendant ejaculated. L.M. was unable to get away from defendant because either he would physically hold her, or he would grab her, so she did not do anything to fight back. The first time defendant inserted his penis inside her was at the Vista house, though L.M. could not recall what grade she was in. She and defendant were in the bathroom and L.M. was on the floor after

4

defendant had removed her clothing. She could only describe that it hurt. She felt like she could not get away from defendant on that occasion. Another time defendant raped L.M. in the bedroom while L.M. was on the bed on her back, and defendant was in front of her on his knees.

The first time L.M. told someone about defendant's conduct was in fourth grade when she told a friend. By that time, defendant's acts of touching were "basically everything besides putting it inside." The friend told her she should report the abuse to police, but she did not. She could not recall how soon afterwards that she told her friend that defendant would put his penis inside her.

When asked more specifically about the incidents where defendant touched his penis to her thighs, L.M. described it as touching her private part on the outside, but not inside. That type of touching occurred "a lot of the times. [¶] . . . [¶] . . . Every month." L.M. testified that this type of touching "was . . . already happening" when she told her friend in the fourth grade. Defendant sometimes put his penis inside L.M. at the Vista house, "[m]aybe a couple of times a month." She could not remember every single incident of defendant's touchings because "there were too many times." L.M. testified that defendant touched his penis on the "inside" of her private parts before she got her period, which started when she was eleven years old. According to L.M., this happened a couple of times a month.

The parties stipulated that a sexual assault response team nurse conducted a "non-acute" forensic examination of L.M. and reported no findings. An expert testified that a normal result did not mean sexual abuse did not take place.

In closing arguments, the prosecutor pointed out that the verdict forms for counts 1 and 2 indicated the crime had occurred "on or about and between

5

August 1, 2017 and November 25, 2019[,]" when L.M. was 10 years old or younger.  She explained the People did not "have to prove to you a specific date, because when chronic molest has happened over so much time, children don't keep diaries.  They don't keep calendars.  They will not remember when something happened.  They will be able to tell you certain things, but not specific dates.  And the law recognizes that, and that's why the law says it's okay to charge something 'on or about' or in between a time period that something occurred without knowing the specific date."  The prosecutor reiterated that when L.M. was 10 years old in fourth grade, she told her friend defendant had been doing "everything but putting it inside."  She said, "What's 'everything?'  Putting his penis—she said outside the vagina.  Does that mean that now you can't find him guilty of this?  Well, no, because she doesn't know that the law protects any penetration, however slight, of the labia majora.  For her, it's the 'outside' and the 'inside,' because it's distinguishing for her, right?  That's a big moment for her, when he started to have—to really rape her.  She doesn't know that the law had already protected her as sexual intercourse of him raping her before, when he just put it on her labia majora.  [¶]  Because think about it: a penis rubbing on a woman's labia majora—there is going to be penetration, however slight, and he did it over and over and over and over again.  That's what she had to endure.  Ejaculation is not required."

## DISCUSSION

Defendant contends this court must reverse his count 1 and 2 convictions because there is insufficient evidence he committed any act of genital penetration, however slight, when L.M. was 10 years old or younger. As to the timeframe, he points out that while L.M. described two acts of intercourse that occurred in the Vista house where her family lived until L.M.

6

was 12 years old, she could not recall when the first act of intercourse occurred or how old she was, and his own statements did not establish the timeframe of any slight penetration. He acknowledges L.M.'s testimony that sexual intercourse took place before she had her period at age 11, but argues there was no evidence to show precisely *when* at that age L.M.'s period started. He argues "absent evidence [L.M.] started getting her period on her eleventh birthday, penetration still could have first occurred *after* she turned age 11, which is not sufficient to prove a violation of section 288.7, subdivision (a)."

As to the act itself, defendant acknowledges that the offense requires only evidence of some penetration of the outer lips of the vagina, but he argues that when L.M. recounted him rubbing his penis against her private parts, she never testified to any penetration within the meaning of the statute. He asserts that "putting the penis *on* the labia majora does *not* ipso facto amount to an act of penetration." According to defendant, the jury could only speculate that penetration occurred during the sexual contact, and argues reasonable inferences cannot be based on such speculation.

## I. *Standard of Review*

Defendant's claim is governed by the substantial evidence standard of review. In applying that standard, "we review 'the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] Substantial evidence is ' "evidence that 'reasonably inspires confidence and is of "solid value." ' " ' " (*People v. Collins* (2025) 17 Cal.5th 293, 307.) " 'We presume in support of the judgment the existence of every fact the trier of fact reasonably could

7

infer from the evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' " (*People v. Westerfield* (2019) 6 Cal.5th 632, 713.)

The test is whether substantial evidence supports the jury's conclusion (*People v. Johnson* (1980) 26 Cal.3d 557, 576-578), not whether the reviewing court would reach the same conclusion (see *People v. Cravens* (2012) 53 Cal.4th 500, 507-508).  "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence.' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  " 'We resolve neither credibility issues nor evidentiary conflicts . . . .' " (*Ibid*.; see *People v. Coulthard* (2023) 90 Cal.App.5th 743, 754; *People v. Riazati* (2011) 195 Cal.App.4th 514, 532 ["We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses"].)  Reversal is not warranted " 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*Cravens*, at p. 508.)  " 'The uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable.' " (*People v. Panah* (2005) 35 Cal.4th 395, 489; *People v. Jones* (1990) 51 Cal.3d 294, 314 [reviewing court must "not substitute our evaluation of a witness's credibility for that of the fact finder"]; *Riazati*, at p. 532.)

"[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Farnam* (2002) 28 Cal.4th 107, 143.)  "However, '[a] reasonable inference . . . "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.  [¶]  . . . A finding of fact must be an

8

inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence." ' " (*People v. Davis* (2013) 57 Cal.4th 353, 360.)

## II. *The Law*

Section 288.7, subdivision (a) provides in part: "Any person 18 years of age or older who engages in sexual intercourse or sodomy with a child who is 10 years of age or younger is guilty of a felony . . . ." "Sexual intercourse" for purposes of section 288.7, subdivision (a), "require[s] penetration of [the] labia majora, not [the] vagina." (*People v. Dunn* (2012) 205 Cal.App.4th 1086, 1097; see also *People v. Mendoza* (2015) 240 Cal.App.4th 72, 79; *People v. Paz* (2017) 10 Cal.App.5th 1023, 1037 ["appellate courts have long held that vaginal penetration does *not* require penetration of the vagina"]; accord, *People v. Quintana* (2001) 89 Cal.App.4th 1362, 1371 and *id.* at p. 1364 [definition of sexual penetration in section 289 "refers to penetration of the labia majora, rather than penetration of the vagina"].) Sexual penetration may be established by circumstantial evidence. (*People v. Stevenson* (1969) 275 Cal.App.2d 645, 650.)

## III. *Analysis*

We agree with the People that sufficient evidence supports defendant's count 1 and 2 convictions. Defendant admitted to Y.G. he started sexually abusing L.M. when she was eight or nine years old, and L.M. testified the abuse happened "a lot" and "every month." L.M. testified defendant had done "basically everything besides putting it inside" when she disclosed the abuse to her friend in fourth grade, when L.M. would have been age nine during the time circumscribed by the information. She testified his touching the outside of her vagina with his penis "was . . . already happening" when she told her friend in the fourth grade. In view of this evidence, combined with L.M.'s

statement to the investigator that defendant put his penis on her vagina and "thrusted," it strains credulity to suggest that in the course of all these assaults his penis never once passed between her labia majora, or never until after November 25, 2019. The People argue that "[g]iven the frequency of the act and the nature of it, a reasonable jury could conclude that [defendant] penetrated L.M.'s vagina or labia majora, even if just slightly." We agree, and hold the jury could so find beyond a reasonable doubt in light of the record as a whole. It is true that L.M. was never asked at trial whether defendant's private part passed between her labia during the time that he rubbed or thrust it against her vagina, but the jury could reasonably infer the requisite penetration based on L.M.'s statement to the social worker. Our conclusion is not undermined by L.M.'s testimony that defendant's touchings were on the "outside, not the inside," as the jury could interpret those statements to mean only that his penis never entered her vaginal opening.

DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

CASTILLO, J.